MAZANDER *v.* REED.

5-2387                                        345 S. W. 2d 469

Opinion delivered April 24, 1961.

*Richard W. Hobbs* and *B. W. Thomas,* for appellant.

*McMillan & McMillan,* for appellee.

PAUL WARD, Associate Justice. Appellants filed suit in Chancery Court to cancel, on the alleged ground of fraud, a deed executed by them to appellees. From an adverse decision they now prosecute this appeal.

On October 2, 1952, appellants, Charlie A. Mazander and Mildred L. Mazander, executed a warranty deed conveying to Thomas E. Reed and Ida Lee Reed, his wife, lots 11, 12, 13, 14, 15 and 16 of Mazander's Subdivision, being a part of Section 10, Township 3 South, Range 19 West. In consideration for the execution of said deed appellee, Thomas E. Reed, executed an assignment of an undivided 1/32 working interest in and to an oil and gas lease located in Dubois County, Indiana, on which lease an oil well was being drilled. Mrs. Mazander, who negotiated the transaction with Reed, testified that she knew nothing about the oil and gas business and therefore relied on what Reed told her. She also testified that Reed told her his company had already drilled a well to the depth of about 1,100 feet; that the prospects

for oil were good, and the the company intended to drill the well to a depth of 1,800 feet. She admits that about 3 weeks after she and her husband executed the said deed Reed told her that they had finished the well and that it was dry. Apparently this settled the whole matter in Mrs. Mazander's mind for the time being, but some 5 or 6 years later her son wrote a letter to the Indiana Oil and Gas Commission seeking information relative to the oil well in question. In response to this letter appellants came into possession of two documents which, to their minds, indicated that Reed had fraudulently given them incorrect information. As a result of such information they filed this suit on May 19, 1958.

Mrs. Mazander testified that if Mr. Reed deepened the well after October 8, 1952 to 1,800 feet, then he did what he told them he was going to do, and she also stated that she thought Mr. Reed would have fulfilled his agreement if he drilled on the well after he executed the assignment.

In substance Mr. Reed testified: At the time of the execution of the assignment to appellants we had drilled down to approximately 1,100 or 1,200 feet and on August 28, 1952, casing was set and we began to pump the well; in 3 or 4 weeks we had pumped 12 barrels of oil; when I talked with Mrs. Mazander on about October 1, 1952, I told her we would go down to 1,800 feet because the well was not then producing satisfactorily. Reed further testified: After I gave Mrs. Mazander the assignment we did drill the well to 1,800 feet to test the Devonian formation but did not get a producing well; after I gave Mrs. Mazander the assignment I went back to Indiana and stayed at the Ideal Hotel in Huntingburg, which was about 12 miles from the oil well until October 27th, during which time the well was drilled from about 1,200 feet to about 1,800 feet; after I found out the well was dry I returned to Hot Springs where I saw Mrs. Mazander and told her we had a "dry" hole. Reed introduced receipts purporting to show that he had stayed at the Ideal Hotel from October 13th to October 26th, and he also exhibited invoices of the Standard Oil Company dated October 17 and October 21 showing

delivery of furnace oil, gasoline, etc., at the well during that period of time.

The essence of appellants' contention appears to be that the well was dry when they traded their property for the assignment; that the well had been finished and abandoned at that time, and that no further work was done on the well thereafter. Mrs. Mazander stated that if Mr. Reed deepened the well after October 8th to 1,800 feet then he did what he said he would do and in that event Mr. Reed would have fulfilled his agreement.

Appellants contend however that the information received from the Indiana Oil and Gas Commission refutes Mr. Reed's testimony and shows that no work was done on the well as testified to by him. We are unable to agree with this contention. One of the documents relied on by appellants is designated "Well Plugging Affidavit." It was signed by T. E. Reed on August 12, 1955, and shows that drilling on the oil well began on June 18, 1952; that it was drilled to a depth of 1,800 feet; and that it was completed on August 28, 1952. The affidavit consists of two pages and contains many items of information. Mr. Reed testified that when he signed the affidavit in 1955 he was not concerned with the date of completion and was not aware that it showed the completion date to be August 28, 1952. He further testified that said date was incorrect. (It is noted that the casing was set on August 28, 1952.) The other document received and relied on by appellants to discredit Reed's testimony is designated "Indiana Geological Survey." It contains some 20 lines of dates and figures, the last of which is "2-25-53 complete." After careful examination of the entire document we find nothing that positively discredits Reed's testimony. Appellees' interpretation of a portion of the document is as follows:

" '9-25 S.D.        1350'

"Which means that on September 25 the well was shut down at 1,350 feet,

514

'10-2                    check'

'10-9                    check'

'10-16 fsh              1382'

"Which means that on October 16 they were 'fishing' for lost tools at 1,382 feet,

'10-23 G D R            1550'

"Which means on October 23 they were drilling at 1,550 feet,

'10-30 D & A'

"Which means on October 30—dry and abandoned."

The law applicable to this case is well settled. "Fraud is never presumed, but must be proved, and the burden of proving it is upon the party alleging it," is the rule approved in *Stuttgart Rice Mill Co.* v. *Lockridge*, 185 Ark. 340 (at page 349), 47 S. W. 2d 596. In *Welch* v. *Farber*, 188 Ark. 693 (at page 697), 67 S. W. 2d 588 we said: "The burden is upon him who alleges fraud to prove the same by clear and satisfactory evidence." In *Arkansas Valley Compress & Warehouse Co.* v. *Morgan*, 217 Ark. 161 (at page 165), 229 S. W. 2d 133 the court approved this statement: "Actual or positive fraud includes cases of the intentional and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another."

The contention of fraud in this case narrows down to a single question of fact; had the oil well in question been completed down to 1,800 feet and found to be "dry" on October 2, 1952, when Reed represented the facts to be otherwise?

The chancellor held against appellants' contention, and we think such holding is supported by the weight of the evidence.

Affirmed.