**Ilo VANDERBOOM, Investors Thrift Corporation, et al., Appellants,**

v.

**Sam SEXTON, Jr., et al., Appellees.**

**Nos. 71–1375 to 71–1377.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1972.

Decided May 30, 1972.

William M. Stocks, Fort Smith, Ark., for appellants.

Philip S. Anderson (argued), Edward L. Wright, Little Rock, Ark., and Don A. Smith, Fort Smith, Ark., for appellees.

Before VAN OOSTERHOUT and STEPHENSON, Circuit Judges, and REGISTER, Senior District Judge.*

VAN OOSTERHOUT, Circuit Judge.

Before us are timely appeals (1) by plaintiff Investors Thrift Corporation (ITC) from judgment of May 10, 1971, dismissing its common law fraud action as to all defendants, and order of May 20, 1971, denying motion for judgment in favor of ITC against all defendants as a matter of law and denying ITC's motion for a new trial; (2) by Vanderboom, et al., individual stockholders in ITC, from order dismissing the individual stockholders as parties plaintiff for want of standing.

ITC and some individual stockholders in said corporation brought this action against Sam Sexton, Jr., Jim Hall and Huey Smith,[1] owners of 100% of the stock in American Home Builders (AHB) who sold such stock to ITC. AHB owned substantial interests in subsidiary corporations including Peoples Loan & Investment Company (PL&I) which passed with the sale of the AHB stock. Plaintiffs alleged that the sale of the AHB stock to ITC was induced by fraudulent representations in violation of 15 U.S.C.A. § 78j, which is § 10 of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

Austin Gatlin, his wife Erma,[2] Diamond "G" Ranch, and Texas Capital Corporation, now Telecom Corporation, were also charged with actual fraud in the sale transaction. Liability of each defendant, based on common law fraud, was also asserted. A jury trial was demanded on all issues.

This case has heretofore been before this court as reflected by our opinion reported at 422 F.2d 1233. On such prior appeal, we noted that the trial court for reasons stated in its opinion, reported at 294 F.Supp. 1178, had dismissed plaintiffs' action to the extent that it was based on common law fraud on the ground of lack of diversity of citizenship, and entered summary judgment dismissing the claim based on the violation of the Federal Securities Act on the ground that it was barred by the statute of limitations. With respect to the claim based on the Securities Act violation, we held that the trial court properly determined that the applicable statute of limitations was § 22 of the Arkansas Securities Act of 1959, Ark.Stats.Annot. § 67–1256(e), which provides for a two-year statute of limitations, and that while the alleged fraudulent representations took place more than two years

---

* Judge Register died prior to the completion of this opinion and did not participate in its drafting.

1. Huey Smith could not be located for service and no jurisdiction was obtained as to him.

2. Erma S. Gatlin is deceased and the action as to her was abated.

prior to the commencement of the action, the statute would not commence to run until the fraud in the exercise of due diligence was or should have been discovered, that such issue could be resolved only by a plenary trial and the case was remanded to the trial court for a determination of the issue of whether the securities violation was barred by limitations.

We also reinstated the common law fraud action upon the basis of pendent jurisdiction. The action was commenced within the three-year Arkansas statute of limitations applicable to common law fraud. Upon remand, the trial court conducted a six-day jury trial upon all issues remanded to the trial court. The trial court at the conclusion of all the evidence submitted an interrogatory to the jury specifically inquiring whether the alleged fraud was discovered by the plaintiffs or an authorized agent in charge, or could have been discovered by the exercise of diligence prior to July 18, 1966. (The action was commenced on July 18, 1968). The jury answered "Yes". Upon the basis of such answer, the charge based on the Securities Act was dismissed as barred by the statute of limitations. The dismissal of the claim based upon the Securities Act violation is not challenged on this appeal. The trial court did not submit the common law fraud issue to the jury. Under the court's instructions, the jury was required to proceed no further if it answered the statute of limitations interrogatory in the affirmative, which it did.

After the jury found for the defendants upon the Securities Act statute of limitations issue, the verdict was accepted and the jury was discharged. The court in its judgment entry disposed of ITC's common law fraud claim as follows:

"And, the court after a full consideration of the evidence finds that there was no evidence presented that would substantiate the claim of plaintiff based upon common law fraud and deceit under the law of the State of Arkansas, and that said claim should be dismissed with prejudice. Therefore,

"IT IS ORDERED AND ADJUDGED that the complaint as to the claim of plaintiff, based on common law fraud and deceit under the law of the State of Arkansas be and it is dismissed."

The court during the course of the trial also determined that the individual stockholders of ITC lacked standing to maintain the suit and that ITC was the only proper party plaintiff.

The separate appeal of Vanderboom, et al., individual investors, from the trial court's determination that they lacked standing to participate in the suit can be readily disposed of. The purchaser of the AHB stock, which it is claimed was induced by fraud, was ITC, the corporation. ITC is a party plaintiff and its standing to bring the suit has been recognized. No contention is made by the individual investors that they are bringing this case as a derivative suit or that the interest of ITC's stockholders is not adequately represented by the corporation.

Moreover, pendent jurisdiction applies only when the same parties are involved in both the state and federal claims and judicial economy results from trying the claims in the same action. We clearly held on the prior appeal that "ITC is the only proper party on the 10b–5 claim." Thus the individual plaintiffs had no federal claim to which their possible state fraud claim could attach under the doctrine of pendent jurisdiction.

The trial court properly interpreted our prior opinion as holding that ITC is the only proper plaintiff in this case. Our prior determination on this issue constitutes the law of the case.

We now proceed to consider ITC's contention that the trial court erred in failing to submit its common law fraud claim to the jury and in dismissing the claim.

It is apparent from the record that the trial court assumed pendent jurisdic-

tion on the common law fraud claim; that the plaintiffs' demand for a jury trial thereon was recognized; that the plaintiffs never waived their jury trial demand, and that the jury was afforded no opportunity to pass on the common law fraud claim. The trial court had previously denied the motions of defendants Sexton, Hall and Gatlin for a directed verdict. Assuming that the court had a right to reconsider its ruling on the directed verdict issue, the dismissal of the common law fraud claim can only be affirmed if the court correctly determined that there was no substantial evidence on the record as a whole to support a verdict for the plaintiffs upon such claim.

We have heretofore held that the federal court and the Arkansas Supreme Court apply substantially the same test for determining the sufficiency of evidence to support a verdict. Marshall, Administratrix, v. Humble Oil & Refining Co., 8 Cir., 459 F.2d 355 (May 3, 1972), and cases there cited.

All disputed fact issues and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party against whom the directed verdict is sought. Schneider v. Chrysler Motors Corp., 8 Cir., 401 F.2d 549, 555; Hawkins v. Missouri Pacific R. R., 217 Ark. 42, 228 S.W.2d 642, 643. In the *Hawkins* case just cited, the Arkansas Supreme Court holds:

"A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury." 228 S.W.2d 642, 644.

Common law fraud in the inducement of a contract is recognized in Arkansas as "The intentional and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another." Mazander v. Reed, 233 Ark. 511, 345 S.W.2d 469, 471.

The Arkansas Supreme Court in Arkansas Valley Compress & Warehouse Co. v. Morgan, 217 Ark. 161, 229 S.W.2d 133, recognizes that fraud is defined in terms of the elements rather than in an all inclusive definition. It can also be said that Arkansas gives some recognition to constructive and intentional fraud. See, e. g., *Morgan,* supra. It is not necessary for us to here delineate all of the boundaries of common law fraud in Arkansas, since on the evidence in this record a jury could find actual fraud.

Judge Miller found in the first trial of this case that fraud includes representations made by one knowing them to be false or asserting them to be true intending to have the other party reasonably rely upon them to the detriment of the one relying. Vanderboom et al. v. Sexton et al., 294 F.Supp. 1178. The parties are in substantial agreement with that characterization and we accept it for the purposes of this opinion.

Defendants objected to testimony offered and moved to strike testimony received to establish fraud alleged to have induced the purchase of the AHB stock upon the ground that such testimony violated the Parol Evidence Rule. Such testimony was properly received. It is well-established that parol evidence is admissible for the purpose of establishing that the execution of a written instrument was procured by fraud. See 32A C.J.S. Evidence § 979 and numerous cases there cited.

Any attempt to set out in detail the voluminous evidence would unduly extend this opinion and serve little useful purpose. The litigation arising out of the events here involved has been extensive. The underlying facts are set forth in considerable detail in the trial court's

reported opinion and our opinion on the prior appeal, all heretofore cited, and in City National Bank of Fort Smith, Arkansas v. Vanderboom, 290 F.Supp. 592, aff'd 422 F.2d 221; and In the Matter of Peoples Loan & Investment Co., 8 Cir., 410 F.2d 851.

A careful review of the evidence satisfies us that there is substantial evidence to support a jury finding that Sexton, Hall and Gatlin made representations that the net worth of the items involved in the sale contract was substantial; that such representations were false; that such falsity was known by the parties making the representations; that such representations were material and were relied upon by ITC and induced ITC to purchase the AHB package.

Ronald Butler, qualified Certified Public Accountant, employed by PL&I and AHB, testified that the books and records did not adequately reflect the financial condition of AHB and PL&I. His testimony indicates that the true financial worth of the companies was a net deficit of $537,253.18 of AHB as of September 30, 1965, rather than the net worth of $340,000.00 allegedly guaranteed by some of the defendants or the $600,000.00 reflected by a balance sheet displayed to some or all of the plaintiffs. According to Mr. Butler, the difference in net worth was caused by certain questionable accounting procedures used by AHB and PL&I.

There is evidence that Sexton and Hall, prior to making the representations upon which ITC asserted it relied, received an audit report from Arthur Anderson and Company pointing to many substantial irregularities in the accounting procedures employed which materially inflated the net worth statements of the corporations involved. The statements were shown to ITC's representative prior to the sale.

There is likewise substantial evidence that Gatlin, a former owner of PL&I who received a substantial commission on the sale to ITC, made representations known by him to be false as to the value of the stock and that additionally he urged ITC to complete the deal without obtaining an independent audit on the basis that an audit would cause an undue delay and that it was imperative to take the management of the company out of Sexton's hands as soon as possible.

There is substantial contrary evidence offered on behalf of the defendants including evidence disputing the asserted misrepresentations, knowledge of falsity and evidence that the stock was as represented, and that the loss occurred because of gross mismanagement by ITC after it obtained possession. We also note that Markham, who served as manager of the acquired property after its acquisition and who played a leading roll in making the purchase, was not called as a witness.

It is not the function of the trial court in a jury case to pass on the credibility of witnesses or the weight of the evidence, nor is it our function to do so upon review. We recognize that defendants have presented a substantial defense to the common law fraud claim and express no view on the merits of plaintiffs' common law fraud claim. We hold that the court erred in not submitting the common law fraud claim to the jury and in dismissing such claim without the aid of the jury as to defendants Sexton, Hall and Gatlin.

ITC urges that the trial court committed error in sustaining the motions of Telecom Corporation and Diamond "G" Ranch for a directed verdict made at the close of plaintiffs' evidence. We hold that such motions were properly sustained as to such defendants.

AHB and its stockholders by virtue of their individual guaranty were indebted to Telecom for $700,000.00 on secured loans made by Telecom. ITC by its purchase contract as part of the consideration agreed to and in fact did pay such indebtedness. ITC became obligated to pay Telecom by the exercise of its option to purchase the AHB stock at least by November 2, 1965. Willis, whose testi-

mony is relied upon as to Telecom's representations, was indefinite with respect to the time the alleged representations were made. Included in Willis' testimony is the following:

"Q. Would it be fair then to say that it was some time during September 9 and November 2nd of 1965?

A. No, be more like December.

Q. This would have been after the November contract but before you finally paid them off in January of 1966?

A. I believe so."

■ By December 1965 ITC had already obligated itself by its purchase contract to make the payments due Telecom. Obviously representations made after ITC had completed its AHB purchase could not constitute an inducement for the purchase. The trial court as a basis for sustaining the directed verdict motion as to Diamond "G" Ranch stated: "There is no testimony here or circumstance from which or upon which a finding could be based that the Diamond G Ranch had made any misrepresentation or failed to comply with the statute in any way, shape, form or fashion; . . ." We agree. There is evidence that Diamond "G" Ranch is a corporation controlled by Gatlin but we find no substantial evidence to support a finding that Gatlin was acting for Diamond "G" with respect to any representations that Gatlin may have made.

We summarize our holdings as follows:

1. The court properly determined that the individual investors (all plaintiffs except ITC) should be dismissed as plaintiffs and such determination by the trial court is affirmed.

2. The judgment dismissing the plaintiffs' claim based upon the Federal Securities Act as barred by the statute of limitations is affirmed.

3. The dismissal of the common law fraud action as against Telecom Corporation and Diamond "G" Ranch, Inc., on the basis of their motions for directed verdict is affirmed.

4. The judgment dismissing the common law fraud claim of ITC as to the defendants Sexton, Hall and Gatlin is reversed and the case is remanded to the trial court for a new trial on the common law fraud issue as to the defendants Sexton, Hall and Gatlin.