**ALLEN ORGAN COMPANY**

v.

**NORTH AMERICAN ROCKWELL CORPORATION et al.**

Civ. A. No. 72–1576.

United States District Court,
E. D. Pennsylvania.

Sept. 5, 1973.

As Amended Oct. 24, 1973.

David Berger, Harold Berger and Paul Joseph McMahon, Philadelphia, Pa., for plaintiff.

Henry W. Sawyer, III, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

TROUTMAN, District Judge.

Briefly stated, the factual background underlying this action concerns the development and sale of microelectronic components for use in computer organs. Plaintiff, Allen Organ Company, [Allen], is engaged in the production and sale of electronic organs and other electronic musical instruments. The corporate defendant, North American Rockwell Corporation, [Rockwell], is a technically-oriented research and manufacturing company, engaged in various types of electronic, mechanical and aerospace technology, including the production of microelectronic devices and systems. In connection with microelectronic systems, Rockwell's NRMEC Division is engaged in the development and production of metal oxide semi-conductor devices [MOS devices]. The individual defendants, Carlson and Edge, are President and Vice-President of Business Affairs respectively of Rockwell's NRMEC Division. Defendant Deutsch was a former employee of the NRMEC Division.

In 1966, Rockwell conceived the idea of applying computer technology to the production of musical sounds. By 1967, Rockwell sufficiently developed this concept and at that time Deutsch filed a patent application. Thereafter, Rockwell contacted Allen, in addition to several organ manufacturers, seeking to license the patent. Following extended negotiations over a period of years, Allen and Rockwell entered into a series of contracts. Allen's dissatisfaction with Rockwell's performance under these contracts ultimately manifested itself in the instant litigation.

In its complaint, Allen charges defendants with violations of Section 10(b) of the Securities Exchange Act of 1934 and of Rule 10(b)(5) of the Securities and Exchange Commission (Counts I and V); with common law fraud (Count II); with violations of the anti-trust laws, including Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act, (Count III); and with breach of contract (Count IV). Before the Court is the motion of individual defendants to quash service of process. In addition, both the individual and corporate defendants have moved to dismiss certain portions of the complaint. Thus, for the purpose of this motion we must accept the facts as alleged in the complaint as true.

Briefly stated, the relevant facts are as follows: In 1968, defendants, Rockwell and Deutsch, contracted Allen, advising Allen that they planned to develop a microelectronic computer system, composed in part of MOS devices, for installation in organs and other musical instruments. Defendants proposed that Allen purchase the exclusive right to utilize Rockwell's microelectronic system technology and expertise in the organ and musical instrument field. Thereafter, the parties engaged in intensive negotiations in which Rockwell allegedly made numerous representations which, according to Allen, later proved to be false. On May 21, 1969, in reliance on these representations, the parties entered into a series of contracts which they term the "Tone Generation System Transaction". Under these contracts, Rockwell agreed to grant plaintiff an exclusive license to use Rockwell's computer organ technology in the United States and various foreign countries and to grant plaintiff the right of first refusal for an exclusive license regarding any

innovations thereafter developed in the field. [Licensing Contract]. In addition, Rockwell agreed to furnish plaintiff with experimental and prototype models of the proposed computer organ system, utilizing the MOS devices, in addition to certain technical information. [Development Contract]. In exchange, plaintiff was obligated to pay $600,000 in cash to Rockwell, to deliver to Rockwell a $750,000 convertible debenture and to pay Rockwell a specified royalty.

In October 1969, a second series of transactions, known as the "Capture Combination System Transaction" were consummated. A licensing agreement was entered into, whereby Rockwell granted plaintiff an exclusive license and a right of first refusal similar to those granted in the Tone Generation System Transaction. In addition, Rockwell agreed to develop, deliver and disclose information relating to the capture combination system, a device which automatically sets tone adjustments on an organ. In exchange, Allen agreed to deliver to Rockwell 20,000 shares of its Class B common stock.

Subsequent to these initial contracts, numerous problems and disputes arose, many of which plaintiff alleges amounted to breaches of contract. Generally, three major problem areas developed which were: (1) the need to obtain a "second source" for Allen to secure MOS devices; (2) the royalty base for the tone generation patent license; and (3) continued difficulties with the capture combination units.

On May 11, 1972, following several days of negotiations, the parties entered into the "Memorandum of Understanding" which purportedly settled the disputes concerning the "second source" for the procurement by Allen of MOS devices and the royalty base for the tone generation patent agreement. The "Memorandum of Understanding" ostensibly failed to achieve resolution of the problems underlying the contracts and plaintiff, thereafter, commenced this litigation.

## II.

### *Individual Defendant's Motion to Quash Service of Process*

Before the Court is the motion of the individual defendants to quash service of process. By affidavit, the individual defendants have averred that they are residents of California; that they are not presently transacting business in the Commonwealth of Pennsylvania; and that they, except for defendant Deutsch for a brief period in 1957–1958, have never transacted business in the Commonwealth of Pennsylvania, in any capacity other than in their corporate capacity as representatives and employees of North American Rockwell. These defendants have been served on two occasions: initially, they have been served pursuant to the nationwide service of process provisions contained in Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and, secondly, they have been served with the complaint pursuant to the Act of July 1, 1970, P.L. 144, 12 P.S. § 341 et seq.

### A.

The Securities Exchange Act of 1934 provides for nationwide service of process in cases arising under that act and provides in pertinent part as follows:

"Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. § 78aa.

There is no dispute between the parties that the individual defendants were properly served under the above provision as to the securities counts [Counts 1 and 5], and the motion does not seek to quash service as to those counts. These defendants, however, argue that

service under the remaining counts of the complaint is invalid on the ground that there is no statutory basis for such service. Plaintiff, on the other hand, argues the service is proper, although not specifically authorized by statute, under an analogy to the judicially created doctrines of pendent and ancillary jurisdiction. Thus, the question before the Court is whether the statute providing for nationwide service of process in securities litigation permits service of process as to pendent claims as well as securities claims.

At the outset, we note that there exists a split of authority on this question not only within the federal courts in general, *see* cases cited in 2 Moore, Federal Practice ¶ 4.42[1] n. 43, 44, but also within this district. *Compare* In re Penn Central Securities Litigation, 338 F.Supp. 436 (E.D.Pa.1972) *with* Huber v. Bissel, 39 F.R.D. 346 (E.D.Pa.1965) and Lasch v. Antkies, 161 F.Supp. 851 (E.D.Pa.1958). Those courts which have not permitted service as to related claims under the nationwide service provision of the Securities Act have reasoned that Congress has not explicitly provided for such service and that under this statutory approach, implied extensions of statutes authorizing service of process are discouraged. *See e.g.* Trussel v. United Underwriters, Ltd., 236 F. Supp. 801 (D.Colo.1964); Lasch v. Antkies, *supra*. On the other hand, those courts which have permitted such service have based their conclusion on the policy considerations underlying the judicially created doctrine of pendent jurisdiction: judicial economy, convenience and fairness to litigants. *See e.g.* In re Penn Central Securities Litigation, *supra*; Schwartz v. Eaton, 264 F.2d 195 (2d Cir. 1959) (dictum); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559 (S.D.N.Y.1964); Cooper v. North Jersey Trust Co. of Ridgewood, N. J., 226 F.Supp. 972 (S.D.N.Y.1964); Townsend Corp. of America v. Davidson, 222 F.Supp. 1 (D.N.J.1963).

■ If the considerations of judicial economy, convenience and fairness to litigants are sufficient to support the judicial expansion of the traditionally restrictive scope of federal jurisdiction, these considerations would *a fortiori* support the judicial expansion of service of process. In addition, the trend in this Court has been to permit service of process as to related claims where the principal claim is based in the Securities Act. *See* In re Penn Central Securities Litigation, *supra*; Tanzer v. Huffines, 314 F.Supp. 189 (D.Del.1970); Puma v. Marriott Co., 294 F.Supp. 1116 (D.Del.1969); Townsend Corp. of America v. Davidson, *supra*. By permitting service of process as to the related claims in this case, we would obviate the necessity of piecemeal litigation in both California and Pennsylvania, thereby fostering judicial economy. Since all claims in this case arise out of a common nucleus of operative fact, those persons with particular knowledge of the transactions and alleged misrepresentations involved would be parties to this action. Finally, we perceive no particular inconvenience to the individual defendants, since they are properly before the Court on the securities counts and any depositions required to be taken may be so taken in California without any inconvenience to those defendants.

Moreover, the Court of Appeals in Robinson v. Penn Central Co., 484 F.2d 553 (3d Cir. 1973) recently affirmed Judge Lord's decision in *Penn Central Securities Litigation*, *supra*, and thereby resolved the conflict of authority within this district. The Court rejected the defendants' contention that:

"* * * F.R.Civ.P. 4(f) prohibits the service of process outside of the territorial limits of the state in which the district court is held, unless extra-territorial service of process is authorized by a statute of the United States, and that neither the Securities Exchange Act of 1934 nor the Securities Act of 1933 mention service of process for pendent claims."

The Court reasoned that since both the 1933 and 1934 acts permitted extra-ter-

ritorial service of process in securities cases, the question of extra-territorial service on related non-federal claims was merely an aspect of pendent jurisdiction. We have already concluded that to permit extra-territorial service in the instant case would further the considerations of judicial economy, convenience and fairness to litigants and, accordingly, the motion of the individual defendants to quash service of process will be denied.

### B.

The individual defendants have also been served pursuant to the Pennsylvania Long Arm Statute, governing service of process in actions against non-residents. Act of July 1, 1970, P.L. 144, 12 P.S. § 341 et seq. The defendants have also moved to quash this service in its entirety, on the ground that they were acting in their corporate capacity as employees or representatives of a corporation rather than "acting individually" as that term is used in the Act. Since we have previously determined that the individual defendants have been properly served in this action, we do not reach this issue [1].

### III.

*Defendants' motion to dismiss certain counts of the complaint*

Also before the Court is defendants' motion pursuant to F.R.Civ.P. 12(b)(6) to dismiss certain counts of the complaint for failure to state claims upon which relief can be granted. Specifically, both the corporate and individual defendants have moved to dismiss Counts I and V, which allege violations of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. The grounds for defendants' motion to dismiss these counts are that (1) plaintiff has made no representation for which relief under the Securities Act can be granted; (2) plaintiff did not rely on the alleged misrepresentations; and (3) the alleged representations were not made "in connection with the purchase or sale of a security". All defendants have moved to dismiss Count III insofar as it alleges violations of Sections 1 and 2 of the Sherman Act, on the ground that a combination of a corporation and its officers or employees does not constitute the requisite plurality of actors necessary to constitute a violation of those provisions. In addition, the individual defendants have moved to dismiss plaintiff's claim under Section 3 of the Clayton Act, 15 U.S.C. § 14 on the ground that Section 3 applies only to sellers, and individual defendants have sold nothing to plaintiff. Finally, the individual defendants have moved to dismiss Count IV, alleging breach of contract, on the ground that since they are not parties to the contract, no action can be maintained against them.

1. Individual defendants also raised two other arguments under 12 P.S. § 341 et seq. which can be summarily dismissed.

In the first place, defendants contend that the service of process under Pennsylvania law was in violation of F.R.Civ.P. 5 and Local R.Civ.P. 36 in that no notice of motion was filed and no written motion was served upon defendants. This action was commenced and defendants were served pursuant to the nationwide service provision of the Securities Act. After counsel for defendants had entered his appearance, plaintiff filed a motion for substituted service pursuant to 12 P.S. § 341 et seq. This motion was presented *ex parte* and was granted. Defendants move to quash the service on the ground that they received no notice and no copy of the motion. Such proceedings are generally *ex parte* and the only difference here is that defendants had already entered their appearance in the suit. At any rate, the proper method to challenge the manner or sufficiency of process is on a motion to quash service of process, as defendants have done here. Accordingly, defendants' motion to quash service of process on this ground will be denied.

Secondly, defendants contended at oral argument that 12 P.S. §§ 341–346 applied only to causes of action alleging facts which occurred subsequent to the passing of the statute. Defendants have withdrawn this contention in the light of Sussman v. Yaffee, 443 Pa. 12, 275 A.2d 364 (1971), which held that the Act applied to all actions commenced after the passage of the statute, regardless of when the alleged facts occurred. *See also* Watkins v. Hagdorn (E.D.Pa. Dec. 6, 1972) (Higginbotham, J.)

██ For the purpose of a motion to dismiss, the material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff. *See* Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Walker Process Equipment, Inc. v. Food Machinery & Chem'l. Corp., 382 U.S. 172, 174–175, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint should not be dismissed unless it appears that plaintiff could prove no set of facts in support of his claims which would entitle him to relief. Jenkins v. McKeithen, *supra*, 395 U.S. at 421, 89 S.Ct. 1843; Conley v. Gibson, *supra*, 355 U.S. at 45, 46, 78 S.Ct. 99.

██ Preliminarily, plaintiff argues that it has had no opportunity to conduct discovery and for that reason, the instant motion should be summarily denied on the ground that it is premature. In this context, the courts have held that summary procedures should be used sparingly in complex anti-trust and securities litigation where motive and intent play leading roles and the proof is largely in the hands of the defendants. *See* Fortner Enterprises v. United States Steel Corp., 394 U.S. 495, 500, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (Anti-trust); Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (Anti-trust); Schoenbaum v. Firstbrook, 405 F.2d 215, 218 (2d Cir. 1968) (Securities); Kubik v. Goldfield, 479 F.2d 472, p. 477 n. 10 (3d Cir. 1973) (Securities). In the instant case, we have before us a series of sophisticated contractual undertakings and complex allegations of fraud, conspiracy and contractual breaches. Under these circumstances, we agree with the cases cited by plaintiff to the extent that disposition under the summary judgment procedures of F.R.Civ.P. 56 would be inappropriate at this time, es-

pecially absent discovery on the part of the plaintiff. We are, however, confronted not with a motion for summary judgment, but rather a motion to dismiss portions of the complaint for failure to state claims upon which relief can be granted. Thus, we are limited in our consideration of this action to a review of the sufficiency of the complaint with all material facts deemed admitted and construed liberally in favor of the plaintiff. Defendants' motion, therefore, may not be summarily dismissed as being premature, and we shall, at this point, determine whether defendants' arguments mandate the dismissal of the complaint.

## A.

Count I and Count V allege violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240. 10b–5. In essence, Section 10(b) proscribes the use "in connection with the purchase or sale" of any security [2] of "any manipulative or deceptive device or contrivance." Rule 10b–5 provides as follows:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange
>
> (1) to employ any device, scheme, or artifice of defraud,
>
> (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or
>
> (3) to engage in any act, practice or course of business which operates or

---

2. Section 3(a)(10) of the Securities and Exchange Act, 15 U.S.C. § 78c(a)(1) defines the term "security" very broadly. Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 10 n.6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Defendants do not argue that the securities involved in the instant case are not securities within the meaning of the Act.

would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

Section 10(b) and Rule 10b–5 are provisions serving a broad and remedial purpose, thus the Supreme Court has mandated that these provisions be read "flexibly, not technically and restrictively". Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

In Count I of the complaint, plaintiff alleges that during the course of the contract negotiations defendants made certain specific representations to Allen, the gravamen of which was that defendants represented that they would supply Allen MOS devices and technical information to enable Allen to procure the devices from other sources. In addition, it is alleged that defendants represented that Allen would be able to develop MOS electronic organ systems which would greatly improve the variety and versatility of the performance of the organs, enabling Allen to satisfy and meet the needs and requirements of a broader spectrum of customers. Finally, defendants are alleged to have represented that Allen would be given a right of first refusal to become the exclusive licensee of all future inventions developed by Rockwell in the microelectronic music field. Allen avers that in reliance on the foregoing material representations, it entered into the contracts in question and transferred securities to Rockwell pursuant to their terms. Allen further averred that the sales and transfers of common stock, debentures and securities were accomplished by the use of various means and instrumentalities of interstate commerce and by use of the mails. Finally, Allen alleges that each of the above representations were knowingly false, resulting in financial injury to Allen.

Count V of the complaint, captioned "Fraud in Amendment of Agreements" pertains generally to the negotiations preceding the "Memorandum of Understanding", entered into on May 11, 1972. During these negotiations, the parties discussed various areas of conflict, including Rockwell's refusal to supply Allen with the technical information and data necessary to enable an alternative supplier to adequately test the MOS devices. Rockwell offered to supply Allen with the deck of computer cards which Rockwell had been using to test the MOS devices it made for Allen, allegedly representing that this would be sufficient to enable any alternative supplier of the devices to establish test criteria. In reliance upon this representation, Allen alleges it entered into the Memorandum of Understanding whereby it delivered to Rockwell all of the common stock then held in escrow pursuant to the Patent License Agreement of October 14, 1969. Finally, Allen alleges that the representation concerning the deck of computer cards was knowingly false and fraudulent.

Thus, a reading of Count I and Count V reveals that plaintiff has alleged, in addition to the requisite jurisdictional allegations, misrepresentations or omissions of material facts made in connection with the sale or purchase of a security. We must conclude that the complaint is sufficient, and states a cause of action under Section 10(b) and Rule 10b–5 in that it properly alleges jurisdiction, the proscribed acts and the causation requirement. Defendants, however, maintain that these securities counts should be dismissed for the following reasons:

**1.**

Defendants' principal argument in support of their motion is that there has been in fact no representation made for which federal relief can be granted. Defendants argue that the alleged representations were made in negotiations and discussions and that any alleged representations with respect to the development of a second source were spe-

cifically disclaimed by Allen in the Memorandum of Understanding, which provides as follows:

"2. 'Second Source' Assistance Under Development Contract dated as of May 21, 1969.

"Any obligation of NRMEC to provide data, drawings, masks and assistance of any nature to Allen in establishing a second source for MOS/LSI, including but *not limited* to Item 3 of Article 1 of the above captioned Contract, or any other agreements with respect to the Tone Generation or Capture Systems, shall be satisfied by delivery to Allen herewith, receipt of which is hereby acknowledged, of NRMEC's production test programs as described in Attachment A hereto, provided that:

"(a) said programs are the most currently used by it in the testing of MOS/LSI delivered to Allen under the above captioned contract; and

"(b) said programs provide sufficient detail and information to enable NRMEC to test the MOS/LSI for the tone generation system on NRMEC test equipment. NRMEC represents only that said programs are those used by it in the testing of MOS/LSI for the tone generation system for Allen. NRMEC makes no additional warranty or representation whatever as to the sufficiency, completeness or usefulness of said data for the testing of such MOS/LSI, and NRMEC shall have no obligation to assist other suppliers or Allen in any manner except as set forth hereinabove."

In addition, the Tone Generation Development Contract, Art. XIII provides as follows:

"This Contract together with the Agreement dated May 12, 1969, between the parties hereto and the other agreements referenced therein constitute the entire understandings and agreements of and between the parties with respect to the subject matter hereof and supersede all prior representation and agreements. It shall not be varied by any oral agreement or representation or otherwise than by an instrument in writing of subsequent date hereto duly executed by the parties."

Thus, in this case, defendants are attempting to invoke the parol evidence rule in a securities case to negate the existence of a misrepresentation, which is an essential element of a cause of action. To this argument, Allen responds that the defendants made misrepresentations not only in the discussions and negotiations, but also in the written contracts. For example, with respect to the development of a second source, Item 3 of the Development Contract of May 21, 1969, states that Rockwell would furnish engineering drawings which "would provide sufficient detail to enable construction of the electrical sub-systems for the MOS prototype." Similarly, Article V of the Patent License Agreement of May 21, 1969, specifically grants Allen the right of first refusal to become the exclusive licensee of patents and patent applications as more specifically detailed and defined in said agreement.

Allen disputes the applicability of the parol evidence rule to securities actions. Allen further argues that even assuming *arguendo* that the rule was applicable to securities cases in general, it would not apply to this action in particular because fraud is alleged. In paragraph eight of its complaint, Allen alleges with specificity the particulars of the alleged fraud. These misrepresentations, Allen alleges, served as an inducement in reliance on which it entered into the series of contracts in question and thereby transferred its securities.

Parol evidence has been admitted in securities cases brought pursuant to Section 10(b) for the purpose of establishing that the execution of a written instrument was procured by fraud. Vanderboom v. Sexton, 460 F.2d 362 (8th Cir. 1972); Doelle v. Ireco Chemicals, 391 F.2d 6 (10th Cir. 1968); Kardon v. National Gypsum Co., 83 F. Supp. 613 (E.D.Pa.1947). Thus, to the

extent that the alleged misrepresentations are not reflected in the writings, parol evidence of a nature sufficient to obviate the effect of the parol evidence rule may be introduced to demonstrate that the contractual provisions in question were induced by fraud or that by reason of fraud, the contracts do not express the true intentions of the parties. *See e. g.* Nicolella v. Palmer, 432 Pa. 502, 507–508, 248 A.2d 20 (1968). Since we are not apprised of the precise nature of plaintiff's proofs in this respect, we do not here decide whether the parol evidence will be admissible in the instant case as a matter of law. We conclude only that it does not appear to a legal certainty that parol evidence will not be admissible to obviate the provisions of the contracts disclaiming all prior representations and, accordingly, defendants' motion to dismiss the securities counts on this ground will be denied.

Defendants rely on two cases from the Second Circuit Court of Appeals which we find inapposite under the facts of this case. In Fershtman v. Schectman, 450 F.2d 1357 (2d Cir. 1971) a group of limited partners sued the general partners on the ground that certain statements made were at variance with the written agreement itself. The alleged misrepresentations concerned the rights of the general partners to terminate the partnership which the general partners had done prior to the suit. The Court of Appeals affirmed the dismissal of the action on the ground that under the agreement the general partners were legally entitled to terminate the partnership in their discretion, thus rendering any prior misrepresentation irrelevant. Such is clearly not the situation in the instant case and, therefore, *Fershtman* is inapposite. In Popkin v. Bishop, 464 F.2d 714 (2d Cir. 1972), relied on by defendants, the Court affirmed the dismissal of the complaint on the ground that the misrepresentations, if any, were not material and that it is not the function of a federal court to become enmeshed in passing judgment on the fairness of a merger. Again *Popkin* is inapposite to the instant case where all of the material elements of a Section 10(b) cause of action are well pleaded.

2.

■ Secondly, defendants argue that the securities claims should be dismissed since Allen agreed in writing that it did not rely on the alleged representations. As previously mentioned, the fact that Allen entered into agreements disclaiming any prior representations is not necessarily dispositive of this action. Moreover, it is now well established that proof of reliance need not be shown in a Section 10(b) cause of action and causation is satisfied by a showing that the facts misrepresented or withheld are material in the sense that a reasonable investor might have considered them important in the making of his decision. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3d Cir. 1972); Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970). Notwithstanding this recent development, both materiality and reliance have been alleged in the complaint and, therefore, the complaint is well pleaded in this respect. Accordingly, defendants' motion to dismiss the securities claims on this ground will be denied.

3.

■ Finally, defendants argue that the securities claims should be dismissed on the ground that the representations were not made "in connection with the purchase or sale of a security". In this vein, defendants argue that the alleged misrepresentations have nothing to do with the securities, rather they related only to the characteristics of the goods developed and sold by Rockwell to Allen. In this action, however, it is alleged that the misrepresentations relating to the goods induced Allen to enter into the contracts by which they transferred their securities. It is well established that the anti-fraud provisions of the Se-

curities Act are designed to protect not only the purchaser but also the seller of securities and these provisions may apply where a seller through a deceptive device is deprived of his compensation for the sale. Superintendent of Insurance v. Bankers Life & Cas. Co., *supra*. Thus, if the value of the goods to be exchanged has been misrepresented and has induced the transfer of stock in exchange therefor, the "in connection with the purchase and sale of securities" requirement of Section 10(b) has clearly been satisfied.

 Similarly, defendants argue that the alleged misrepresentations are exclusively contained in the Tone Generation Development Contract, under which Allen paid a consideration of $60,000 and a cash payment for each tone generation system delivered. Only the Tone Generation Patent License Agreement, defendants argue, contains any reference to a security and that agreement relates only to patent assignments which are not in issue here. In response, Allen correctly notes that the Securities Act is not limited to transactions conducted through a securities exchange or an over-the-counter market, but it applies equally as well to private securities transactions. Superintendent of Insurance v. Bankers Life & Cas. Co., *supra*; L. Loss, Securities Regualtions, Vol. III, pp. 1466–1467. Moreover, Allen argues that at issue is a continuous course of conduct engaged in by defendants and that the cumulative effect of these transactions should be considered as a whole for the purpose of this action.

Rule 10b–5 specifically proscribes any person from engaging in "any act, practice, or *course of business* which operates or would operate as a fraud or deceit upon any person." Moreover, notwithstanding the fact that the instant action is not a garden variety securities case, the "in connection with the purchase or sale of a security" requirement of the Act has been construed liberally to further the purpose of the Act.

Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970); Crane v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969); Heit v. Weitzen, 402 F.2d 909 (2d Cir. 1968); S.E.C. v. Texas Gulf Sulphur, 401 F.2d 833 (2d Cir. 1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L. Ed.2d 756 (1969). In the instant case, the facts as adduced at trial may compel the conclusion that but for the alleged representations made pertaining to the Tone Generation and Capture Combination Agreements, Allen would not have entered into the related patent licensing agreements, under which the securities were transferred. In so concluding, we have given Allen the benefit of all favorable inferences, and for the above reasons, we conclude for the purpose of the motion to dismiss that we are here concerned with a continuous course of conduct. Thus, the "in connection with the purchase and sale of a security" requirement has been satisfied and, accordingly, defendants' motion to dismiss the securities claims on this ground will be denied.

### B.

Count III of the complaint alleges anti-trust violations under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 and § 3 of the Clayton Act, 15 U.S. C. § 14. Plaintiff charges that defendants prevented Allen from acquiring the technology necessary to secure a "second source" of MOS devices in order to monopolize and to unreasonably restrain competition in the manufacture, sale and distribution of such devices for use in computer organs. In addition, Allen charges that defendants refused to supply Allen with individual components and MOS devices, and that such refusal to break down the MOS system constitutes a further violation of the anti-trust laws. Defendants move to dismiss all three anti-trust claims.

### 1.

 Defendants correctly argue that there must be a plurality of actors

to contract, combine or conspire to restrain trade in violation of Section 1 of the Sherman Act and that it is well settled that the required plurality is not supplied by a combination of a corporation and its employees. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71, 82–84 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); Clemmer v. North American Van Lines, Inc., 1969 Trade Cas. ¶ 72.936 (E.D.Pa.1969); Goldlawr, Inc. v. Shubert, 169 F.Supp. 677 (E.D.Pa.1958); 1 J. Von Kalinowski, Anti-Trust & Trade Regulation, § 6.-01[2] (1971). In this respect, it is unclear from a reading of the complaint whether Allen is alleging a combination or conspiracy between the corporate defendant and the individual defendants, who are or were employees of the corporation, or whether it is alleging that defendants entered into a contract in restraint of trade. Section 1, by its clear language, proscribes "Every contract * * * in restraint of trade", and it is irrelevant for the purpose of the anti-trust laws that Allen was a party to the contract. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). Thus, to the extent that Allen relies on the contract between itself and Rockwell to establish the requisite plurality of actors for a Section 1 Sherman Act violation, defendants' motion to dismiss will be denied. To the extent Allen relies on an alleged combination or conspiracy between the corporation and its employees to establish the requisite plurality of actors for a Section 1 Sherman Act violation, defendants' motion to dismiss will be granted.

### 2.

█ Similarly, defendants argue that Allen failed to state a cause of action of conspiracy to monopolize in violation of Section 2 of the Sherman Act, in that an individual officer or employee of a corporation cannot be charged with conspiring with his corporation to monopolize or to attempt to monopolize trade in violation of said section. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., *supra*; Nelson Radio & Supply Co. v. Motorola, Inc., *supra*, 1 J. Von Kalinowski, Anti Trust Laws and Trade Regulation, § 7.02[1] (1971). A reading of the complaint, however, indicates that a conspiracy to violate Section 2 is not alleged; rather, Allen alleges that Rockwell has monopolized and attempted to monopolize trade and commerce in the manufacture, sale and distribution of MOS devices for use in computer organs, for which no concerted action is required. Accordingly, defendants' motion to dismiss Allen's claim under Section 2 of the Sherman Act will be denied.

### 3.

█ The individual defendants argue that Allen's claim under Section 3 of the Clayton Act must be dismissed on the ground that Section 3 in this context applies only to sellers and that the individual defendants have sold nothing to Allen, Section 3 of the Clayton Act, 15 U.S.C. § 14 provides in pertinent part:

> "It shall be unlawful for any person engaged in commerce * * * to lease or make a sale or contract for sale of goods, wares, merchandise * * *".

Allen charges that it was required to purchase MOS devices from Rockwell as a condition to licensing the computer organ patent. The Act itself uses the term "person" which is defined in 15 U.S.C. § 12. In construing this statutory definition, the courts have held that the term "person" applies to individuals as well as corporations and that an officer or employee of a corporation may be sued as an individual for acts done on behalf of his corporate employer in vio-

lation of the anti-trust laws. Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945); Hoffman Motors Corp. v. Alfa Romeo, S.P.A., 244 F.Supp. 70 (S.D.N.Y. 1965); Bergjans Farm Dairy Co. v. Sanitary Milk Producers, 241 F.Supp. 476 (E.D. Mo.1965), aff'd, 368 F.2d 679 (8th Cir. 1966). Thus, the individual defendants' capacity as corporate employees does not insulate them from liability for violations of the anti-trust laws. The question whether the individual defendants have violated the anti-trust laws must be determined following discovery and a hearing on the merits rather than at this preliminary stage of the proceedings. The motion of the individual defendants to dismiss Allen's claim under Section 3 of the Clayton Act is, therefore, premature and, accordingly, the motion at this time will be denied.

### C.

■■■■ In Count IV of the complaint, pertaining to breach of contract, Allen alleges numerous breaches. The individual defendants have moved to dismiss Count IV as it relates to them, on the ground that they are not parties to the contract. It is a general rule in contract law that no person can be sued for breach of contract unless he is a party to the contract. Wolff v. Wilson, 28 Pa.Super. 511 (1905). The Pennsylvania courts have, however, created an exception to this rule where a person, not a party to the contract, is charged with fraud in bringing about a default under the contract. *See* Scicchitano v. Brown, 43 Wash.Co. 69 (1962). In the instant case, while it is clear that the individual defendants are not parties to the contract, they have been charged with fraud in bringing about alleged breaches under the contract. Accordingly, because of these allegations, the motion of the individual defendants to dismiss Count IV of the complaint will be denied.

### IV.

#### *Conclusion*

Defendants have consistently characterized this action as basically a contract action which by imaginative and skillful pleading has "donned the wolf's clothing" of a securities and anti-trust action. Although we recognize that we are probing the outer perimeter of the scope of securities law, we have carefully reviewed the complaint and conclude that it is well pleaded and states claims under the various counts sufficient to withstand a motion to dismiss. We hold only that assuming all of the facts as true and construing these facts liberally in favor of the pleader, defendant's motions to dismiss the complaint for failure to state a claim upon which relief can be granted must be denied.

#### ORDER

And now, this 5th day of September, 1973, it is ordered that:

1. The motion of the individual defendants, Deutsch, Carlson and Edge, to quash service of process is denied;

2. The motion of North American Rockwell Corp. to dismiss Counts I and V is denied;

3. The motion of the individual defendants to dismiss Counts I, IV and V is denied;

4. The motion of North American Rockwell and individual defendants to dismiss plaintiff's claim under Section 1 of the Sherman Act is granted to the extent that a combination or conspiracy between North American Rockwell Corp. and the individual defendants is alleged, and is otherwise denied;

5. The motion of North American Rockwell Corp., and individual defendants to dismiss plaintiff's claim under Section 2 of the Sherman Act is denied;

6. The motion of individual defendants to dismiss plaintiff's claim under Section 3 of the Clayton Act is denied