**Frank R. NUTIS, et al.**

v.

**PENN MERCHANDISING CORP., et al.**

No. 83–5708.

United States District Court,
E.D. Pennsylvania.

June 18, 1985.

Reconsideration Denied Aug. 15, 1985.

---

David L. Braverman, Fellheimer, Eichen & Goodman, Philadelphia, Pa., for plaintiffs.

Stuart H. Savett, Kohn, Savett, Marion & Graf, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Plaintiffs in this action are minority shareholders in Penn Merchandising Corporation ("Old Penn"). Plaintiffs' complaint alleges that various officers, directors and controlling shareholders of Old Penn violated federal securities laws in executing a plan to eliminate minority shareholders at an inadequate price. The complaint also charges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and of state law. Presently before me is defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons stated below, I will dismiss the complaint.

### I. Factual Background

In September of 1983, Old Penn's Board of Directors approved an agreement of merger between Old Penn and New Penn Merchandising Corporation ("New Penn"). New Penn, a privately held corporation formed in order to effectuate the planned

merger, owned 73% of Old Penn's issued and outstanding common stock. The agreement provided that Old Penn would be merged into New Penn, with New Penn being the surviving corporation. Common shareholders other than New Penn were to receive $4.00 per share of Old Penn common stock.[1]

Plaintiffs, minority shareholders of Old Penn common stock, allege that $4.00 per share does not represent the fair value of the stock. They claim that defendants,[2] including Old Penn, New Penn, and persons in control of the two corporations, had formulated a plan to eliminate Old Penn's minority shareholders. Old Penn, pursuant to the alleged plan, offered on March 31, 1983 to purchase up to 350,000 shares of Old Penn common stock at $4.00 per share. Old Penn ultimately purchased 399,500 shares. In connection with the tender offer, defendants did not disclose any intention to take Old Penn private. Plaintiffs assert that Old Penn common stock was worth substantially more than $4.00 per share, but that defendants' failure to disclose their alleged plan resulted in an artificially low selling price.

In October of 1983, defendants sent out a proxy statement soliciting minority shareholder approval of the merger agreement which the board had adopted in September. According to plaintiffs, this proxy statement revealed for the first time defendants' plan to eliminate the minority shareholders by forcing them to sell their common stock for $4.00 per share.

Plaintiffs allege that defendants, in effectuating their plan to take Old Penn private, violated the federal securities laws in several respects. The first count of their complaint charges that defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. According to plaintiffs, defendants planned to eliminate the minority shareholders by acquiring their stock at an unfairly low price. Pursuant to this plan, defendants knowingly and recklessly made false and misleading statements in the tender offer documents dated March 31, 1983 and the proxy statement dated October 12, 1983. In Count II, plaintiffs allege that defendants violated § 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. § 240.14a–9, by issuing a false and misleading proxy statement. Count III charges that defendants, except for Old Penn, are liable under § 20 of the 1934 Act, 15 U.S.C. § 78t, as "controlling persons" who participated in the alleged fraudulent scheme. Count IV charges violations of the RICO statute, 18 U.S.C. §§ 1961–1968. Counts V and VI set forth state law claims, charging common law fraud and breach of fiduciary duty. Plaintiffs seek rescission of the merger or a declaration that the merger is void, actual damages, treble damages under RICO, and attorneys' fees and costs of suit.

Defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. According to defendants, the overriding theme of plaintiffs' complaint is that the minority shareholders were treated unfairly. Citing *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), defendants note that such a charge

---

**1.** The merger apparently had not been consummated when plaintiffs filed their complaint. The complaint, however, alleges that New Penn, the company formed "solely to effectuate the Merger Agreement," owns 73% of Old Penn's common stock. Amended Complaint at ¶ 11. Plaintiffs argue that the merger is therefore assured, and I accept their argument for purposes of deciding defendants' motion to dismiss.

**2.** Defendants include: Old Penn, a Pennsylvania corporation; New Penn, a Delaware corporation recently formed by certain controlling shareholders of Old Penn; Schottenstein Stores

and Value City, controlling shareholders formerly of Old Penn and presently of New Penn; Jerome, Alvin and Saul Schottenstein, officers and directors and formerly controlling shareholders of Old Penn, and controlling shareholders of New Penn; Myron Kaplan, president and a controlling shareholder of both corporations; James Cooke, a member of Old Penn's board of directors; Thomas Ketteler, an officer and director of Old Penn and an officer of Schottenstein Stores; and Louis Pearlman, an officer and director of Old Penn and an officer of and general counsel to Schottenstein Stores.

may give rise to a state law claim, but cannot be the basis for an action under the federal securities laws. Defendants argue that plaintiffs, notwithstanding their vigorous attempts to circumvent the *Santa Fe* rule, have not sufficiently alleged the element of deception required to state a cause of action under federal law. If the claims under the securities laws are without merit, the RICO charges, based on substantially the same allegations of wrongdoing, must also fall, and the pendent state law claims must be dismissed.[3]

Plaintiffs have not yet had the opportunity to conduct discovery. Because summary judgment is generally inappropriate at this stage of a case, I will consider only defendants' motion to dismiss. *See Allen Organ Co. v. North American Rockwell Corp.*, 363 F.Supp. 1117, 1124 (E.D.Pa. 1973). In deciding defendants' motion, I am mindful of my obligation to accept as true the factual allegations of the complaint, together with any reasonable inferences therefrom. Dismissal of the complaint is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *See also In re Catanella*, 583 F.Supp. 1388, 1393 & n. 2 (E.D.Pa.1984).

## II. Plaintiffs' Federal Securities Law Claims

■ As defendants have noted, plaintiffs' complaint and memoranda opposing defendants' motion to dismiss represent a tortuous effort to bring what are essentially state law claims within the jurisdiction of a federal court. Although plaintiffs have struggled to characterize defendants' activities as manipulative and deceptive, the heart of their complaint is that defendants treated the minority shareholders of Old Penn unfairly. The Supreme Court has made clear that such a claim is not cognizable under the federal securities laws. *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

■ *Santa Fe* establishes that a breach of fiduciary duty, absent deception, misrepresentation or nondisclosure, does not violate § 10(b) or Rule 10b–5. *Id.* at 476, 97 S.Ct. at 1302. A plaintiff cannot circumvent the *Santa Fe* holding simply by alleging that a defendant made misrepresentations concerning whether a transaction was fair to minority shareholders. *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978). According to the Third Circuit:

> [I]t is bemusing, and ultimately pointless, to charge that directors perpetrated a "material omission" when they failed to (a) discover and adjudge faithless motives for their actions and (b) announce such a discovery in reporting the products of their managerial efforts and judgment. The securities laws, while their central insistence is upon disclosure, were never intended to attempt any such measures of psychoanalysis or reported self-analysis. The unclean heart of a director is not actionable, whether or not it is "disclosed," unless the impurities are translated into actionable deeds or omissions both objective and external.

*Id.* (quoting *Lavin v. Data Systems Analysts, Inc.*, 443 F.Supp. 104, 107 (E.D.Pa. 1977), *aff'd mem.*, 578 F.2d 1374 (3d Cir. 1978)). As the Ninth Circuit has noted, a contrary holding would "eviscerate the obvious purpose of the *Santa Fe* decision, and ... permit evasion of that decision by artful legal draftsmanship." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 289 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981) (quoting *Hundahl v. United Benefit Life Insurance Co.*, 465 F.Supp. 1349, 1366 (N.D.Tex. 1979)). *See also Bucher v. Shumway*, 452 F.Supp. 1288 [1979–1980 Transfer Binder]

---

3. Defendants also argue that the allegations of fraud in the complaint are not stated with particularity as required by Fed.R.Civ.P. 9(b). Plaintiffs' allegations are sufficiently specific to "place the defendants on notice of the precise misconduct with which they are charged." Rule 9(b) is therefore satisfied. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

Fed.Sec.L.Rep. (CCH) ¶ 97, 142 (S.D.N.Y. 1979), *aff'd mem.*, 622 F.2d 572 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980).

Having set forth the general principles applicable to claims brought by minority shareholders, I will examine plaintiffs' specific allegations. Reduced to essentials, plaintiffs' amended complaint alleges the following:

1. That defendants failed to disclose at the time of the tender offer their intention to take Old Penn private, thereby establishing an artificial ceiling on the price of Old Penn common stock;

2. That defendants failed to disclose that the merger as a whole and the merger price of $4.00 per share in particular were "grossly unfair" to minority shareholders; and

3. That defendants concealed the fact that minority shareholders would not receive the benefit of certain Old Penn assets should the merger be approved.

At time of oral argument, plaintiffs attempted to present certain other theories in support of their claim. In considering defendants' motion to dismiss, however, I must confine myself to the allegations of the amended complaint.

### A. The Tender Offer

In Count I, plaintiffs challenge the March, 1983 tender offer under § 10(b) of the 1934 Act[4] and Rule 10b–5.[5] Plaintiffs claim the documents issued in connection with the tender offer were misleading and deceptive in that they failed to reveal defendants' intention to take Old Penn private and eliminate the minority shareholders. According to the complaint, defendants' failure to disclose their plan damaged plaintiffs by establishing an artificial ceiling of $4.00 per share on the price of Old Penn common stock.

Section 10(b) forbids manipulative and deceptive activities "in connection with the purchase or sale" of securities. In order to state a claim under § 10(b) and Rule 10b–5, the complaint must allege: first, that misrepresentation or deception occurred; second, that plaintiffs purchased or sold securities; and third, that the misrepresentation or deception occurred *"in connection with"* the purchase or sale of a security. *Ketchum v. Green*, 557 F.2d 1022, 1025 (3d Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977). *See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). As to the first element, the complaint states that defendants at the time of the tender offer intended to take Old Penn private and failed to disclose their plan in the tender documents. In considering defendants' motion to dismiss, I will assume that the alleged nondisclosure constituted a deceptive practice within the meaning of § 10(b).[6]

4. Section 10(b) makes it unlawful for any person, directly or indirectly:

To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

5. Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, ...

  (a) To employ any device, scheme, or artifice to defraud,

  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

6. Despite allegations that defendants artificially depressed the price of Old Penn stock, the complaint does not state a claim for manipulation under § 10(b). The Supreme Court has characterized manipulation as " 'virtually a term of art when used in connection with securities mar-

**1578**

■ Plaintiffs have also satisfied the second element. The complaint alleges that, under the merger agreement, plaintiffs as minority shareholders must surrender their shares of Old Penn stock. They thus have standing as "forced sellers" to allege that defendants' actions in relation to the merger violated § 10(b) and Rule 10b–5. *See Engl v. Berg*, 511 F.Supp. 1146, 1152 (E.D.Pa.1981); *Dower v. Mosser Industries*, 488 F.Supp. 1328, 1334 n. 4 (E.D.Pa.1980), *aff'd*, 648 F.2d 183 (3d Cir. 1981).

The question of whether plaintiffs have satisfied the third element is more difficult to resolve. The United States Supreme Court has held that the "connection" requirement of § 10(b) is met if a party "suffered an injury as a result of deceptive practices touching its sale of securities as an investor." *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. at 12–13, 92 S.Ct. at 168–170. As the Court of Appeals for the Third Circuit has noted, this language "could be interpreted to cover practically all disputes relating to intra-corporate management." *Ketchum v. Green*, 557 F.2d at 1027. The Third Circuit, however, refused to read *Bankers Life* so broadly.

In *Ketchum*, plaintiffs claimed they had been fraudulently induced to vote for defendants' reelection as directors. Once defendants were reelected, the board of directors removed plaintiffs as corporate officers and voted to compel the sale and corporate repurchase of plaintiffs' stock. *Id.* at 1024. The district court, holding that defendants' alleged misrepresentations were not "in connection with" the forced sale of plaintiffs' securities, dismissed the complaint for failure to state a claim under § 10(b) and Rule 10b–5. The Third Circuit

affirmed. According to the court, the fraudulent activities of the defendants in *Bankers Life* had "undergirded the securities transaction." In contrast, the forced sale of the *Ketchum* plaintiffs' stock was at best an indirect consequence of defendants' purported misrepresentations. The court concluded that even under *Bankers Life* a closer nexus was required between an alleged misrepresentation and a securities transaction. *Id.* at 1028. *See also Zuckerman v. Harnischfeger Corp.*, 591 F.Supp. 112, 121 (S.D.N.Y.1984); *Teltronics Services v. Anaconda-Ericsson, Inc.*, 587 F.Supp. 724, 731 (E.D.N.Y.1984), *aff'd sub nom. In re Teltronics Services*, 762 F.2d 185 (2d Cir.1985); *Issen v. GSC Enterprises*, 508 F.Supp. 1278, 1286–87 (N.D.Ill. 1981).

In this case, as in *Ketchum*, the relationship between defendants' alleged deception and the ultimate forced sale is attenuated. Plaintiffs contend that the tender offer and the merger agreement were part of a broad conspiracy to freeze out the minority shareholders at an inadequate price. Specifically, they claim that, due to omissions in the tender offer documents, the price of Old Penn stock was artificially depressed. As a result, the minority shareholders were forced under the merger agreement to accept an unfairly low price for their shares.

The United States District Court for the District of Delaware has held that misrepresentations in tender offer materials were "in connection with" a subsequent merger under which plaintiff shareholders were forced to surrender their shares. The court thus permitted plaintiffs to challenge the alleged misrepresentations under § 10(b) even though they had not tendered their shares in response to the tender offer.

kets.' ... The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976)). The March, 1983 tender offer, even if accompanied by misrepresentations which may have af-

fected prices or violated the securities laws, was not an "artificial act[ ] of stimulative trading designed to mislead investors" concerning the market demand for Old Penn stock. *Hundahl v. United Benefit Life Ins. Co.*, 465 F.Supp. 1349, 1360, 1363 (N.D.Tex.1979). *See also Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 56 (2d Cir. 1982); *Radol v. Thomas*, 556 F.Supp. 586, 590 (S.D.Ohio 1983).

*Valente v. PepsiCo, Inc.,* 454 F.Supp. 1228, 1237–38 (D.Del.1978). In light of the Third Circuit's decision in *Ketchum,* I hesitate to adopt *Valente's* expansive interpretation of the "connection" requirement. Because I conclude that the complaint must fall on other grounds, however, I will assume that plaintiffs have alleged sufficient "connection" to satisfy the threshold requirements of a § 10(b) claim. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985).

▪ Once plaintiffs have satisfied the preliminary requirements of § 10(b), they must prove certain other elements. First, the alleged misrepresentations or omissions must be material. Second, the acts of which plaintiffs complain must have caused their alleged injuries. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Plaintiffs' complaint is deficient as to both of these elements.

▪ A misrepresentation or omission in a tender offer document is material if there is "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Flynn v. Bass Brothers Enterprises,* 744 F.2d 978, 985 (3d Cir.1984) (quoting *TSC Industries v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) ).

The question of materiality is particularly complex where, as in this case,[7] the votes of the minority shareholders who challenge a transaction were not needed to approve the transaction. A number of courts, including the Third Circuit Court of Appeals, have held that information is material if it would affect a reasonable shareholder's decision whether to surrender his shares or pursue remedies provided to minority shareholders by state law. *See, e.g.,*

*Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641, 645–48 (3d Cir. 1980); *United States v. Margala,* 662 F.2d 622, 626 and cases cited n. 1 (9th Cir.1981); *United Canso Oil & Gas, Ltd. v. Catawba Corp.,* 566 F.Supp. 232, 240 (D.Conn.1983). *See also Santa Fe Industries v. Green,* 430 U.S. at 474 n. 14, 97 S.Ct. at 1301 n. 14. As the Court of Appeals for the Ninth Circuit has stated, "[a] reasonable investor will not view a fact as significant unless he could respond to the fact's disclosure by protecting himself from possible financial loss." *Margala,* 662 F.2d at 626.

Under these standards, I must determine what effect, if any, defendants' failure to disclose alleged merger plans at the time of the tender offer could have had on a reasonable shareholder considering the proposed merger. If defendants had at the time of the tender offer a concrete plan to effectuate a "going private" merger, information concerning the merger would have been material to shareholders deciding whether to tender their shares. *See, e.g., Greenfield v. Heublein, Inc.,* 742 F.2d 751, 756–57 (3d Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985). Plaintiffs, however, claim they were injured because of the effect of defendants' nondisclosures on the terms of the merger agreement, not because of an investment decision they made at the time of the tender offer.

The complaint alleges that minority shareholders were first informed of the proposed merger when defendants issued a proxy statement soliciting shareholder support for their plans. Plaintiffs were thus in possession of the allegedly essential information[8] *before* the merger was accomplished, and could make an informed decision either to surrender their shares or to pursue state law remedies. Plaintiffs chose to bring this suit rather than to accept the proposed merger terms. The complaint sets forth no allegations from which

---

**7.** Plaintiffs' complaint alleges that defendants controlled enough of Old Penn's stock to accomplish the merger without the approval of the minority shareholders. Amended Complaint at ¶ 11.

**8.** Plaintiffs have also alleged that the proxy statement issued in connection with the merger contained certain material misrepresentations and omissions. I have determined that these allegations are without merit, for reasons discussed later in this opinion.

I can infer that plaintiffs would have acted any differently had defendants disclosed their merger plans at the time of the tender offer.[9] Under the standards set forth in *Healey,* nondisclosures in the tender documents were immaterial to the plaintiffs' investment decisions at the time of the merger. *See Healey,* 616 F.2d at 647–48. *See also Issen v. GSC Enterprises,* 508 F.Supp. 1278, 1292 (N.D.Ill.1981) ("The fact that the defendants had been discussing going private for two years was not material to and would have had no effect upon [plaintiff's] investment decision whether to tender his shares or seek an injunction once the merger had occurred.")

Plaintiffs' complaint is also deficient with respect to the element of causation.[10] Plaintiffs claim that defendants, through omissions in the tender materials, artificially depressed the price of Old Penn common stock. Plaintiffs further contend that, because the market price was depressed, defendants were able to offer minority shareholders a totally inadequate price under the merger agreement.

Initially, I note that these contentions are inferential arguments, not allegations of fact. Although in deciding this motion I must accept the facts as alleged in plaintiffs' complaint, I need accept only the *reasonable* inferences to be drawn from those facts. *See D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984); *Billard v. Rockwell International Corp.,* 683 F.2d 51, 54 (2d Cir. 1982); *Columbia Pictures Industries v. Redd Horne, Inc.,* 568 F.Supp. 494, 501 (W.D.Pa.1983), *aff'd,* 749 F.2d 154 (3d Cir. 1984).

The factual allegations in the complaint belie plaintiffs' argument that defendants' alleged nondisclosures caused them an injury cognizable under the federal securities laws. As discussed above, defendants' merger plans were publicized before the merger was approved by Old Penn shareholders. Plaintiffs argue that the merger price was set on the basis of a market price which was artificially depressed because the public was *not* aware of the merger. The alleged relationship is simply too attenuated to permit an inference that defendants' failure to disclose their plans earlier was responsible for the injuries plaintiffs claim. *See Bloor v. Carro, Spanbock,*

---

9. This case is thus distinguishable from *Western Hemisphere Group, Inc. v. Stan West Corp.,* Fed. Sec.L.Rep. (CCH) ¶ 91,858 (S.D.N.Y.1984). Plaintiffs in *Western Hemisphere* claimed that defendants, in order to induce plaintiffs to sell out a stock position, concealed plans to take Stan West Corporation public. Plaintiffs had invested in and made a loan to Stan West largely because of an anticipated public offering of Stan West stock. Defendants then told plaintiffs that the company no longer intended to go public in the near future, and offered either to convert plaintiffs' loan into stock or to repay the loan in exchange for plaintiffs' surrender of their shares. Plaintiffs, unaware that the company was making arrangements to go public, surrendered their shares. The court found that information concerning such arrangements was clearly material in that it would have affected plaintiffs' decision whether to surrender their shares or convert their loan to stock. *Id.* at 90,278. In contrast, plaintiffs in the instant case have not alleged a sufficient connection between defendants' nondisclosures and any investment decisions which plaintiffs had to make.

10. The causation requirement has several aspects, as Judge Giles recently explained in *In re Catanella,* 583 F.Supp. 1388, 1414–17 (E.D.Pa.

1984). First, the "in connection with" requirement discussed above is closely related to the requirement of causation. *Ketchum v. Green,* 557 F.2d at 1028–29; *Catanella,* 583 F.Supp. at 1414. Second, "transaction causation," or reliance, is required. The activities which plaintiffs challenge must have caused them to engage in the securities transaction in question. *Id.* The question of whether plaintiffs had to make an investment decision which was affected by a misrepresentation has been treated as a causation issue. *See, e.g., Madison Consultants v. Federal Deposit Ins. Corp.,* 710 F.2d 57, 64 (2d Cir.1983); *Saint Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1048–50 (8th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). The Third Circuit, however, has treated this question as one of materiality. *Healey v. Catalyst Recovery,* 616 F.2d at 647–49. My discussion of causation, therefore, is limited to "loss causation," or the requirement that defendants' activities have caused plaintiffs economic harm. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985); *Catanella,* 583 F.Supp. at 1414, 1415–17.

*Londin, Rodman & Fass,* 754 F.2d 57, 61–62 (2d Cir.1985); *Zuckerman v. Harnischfeger Corp.,* 591 F.Supp. 112, 120–21 (S.D.N.Y.1984); *Teltronics Services v. Anaconda-Ericsson, Inc.,* 587 F.Supp. 724, 732 (E.D.N.Y.1984), *aff'd sub nom. In re Teltronics Services,* 762 F.2d 185 (2d Cir. 1985); *In re Catanella,* 583 F.Supp. 1388 (E.D.Pa.1984).

Plaintiffs' argument is further undercut by inconsistencies in the complaint. Paragraph 16 of the complaint alleges:

> In connection with the March 1983 tender offer, defendants failed to disclose to the minority common shareholders of Old Penn or to the investing public that defendants intended to take Old Penn private and thus eliminate minority common stockholders of Old Penn. As a consequence of defendants' failure to disclose said plan, defendants artificially established a ceiling on the selling price of Old Penn common stock at approximately $4.00 per share. At the same time that defendants had established this artificially low selling price, purchasers of Old Penn common stock, other than defendants, were required to pay substantially in excess of said artificial ceiling because defendants controlled the very "thin market" for Old Penn common stock. Had defendants disclosed their intention to take Old Penn private and thus eliminate minority common stockholders, the common stock of Old Penn would have sold in the open market at prices materially in excess of $4.00 per share, thus reflecting the true value of the common stock.

In light of the importance of establishing a causal nexus between defendants' acts and plaintiffs' alleged losses, I am disturbed by plaintiffs' failure to state precisely when they purchased their shares and what effect defendants' nondisclosures had upon their investment. *See Zuckerman,* 591 F.Supp. at 120. Instead of setting forth facts, plaintiffs are apparently attempting to construct a theory under which defendants' nondisclosures caused injury to buyers, sellers, and continuing holders of Old Penn stock all at one time; to everyone, in fact, but defendants themselves. Plaintiffs cannot have it both ways. If Old Penn stock could command prices higher than $4.00 per share, I cannot accept plaintiffs' argument that defendants' actions in connection with the tender offer established an artificial ceiling of $4.00 per share. If defendants controlled the market for Old Penn stock, it is not plausible to argue that disclosure of defendants' merger plans would have caused the market price to rise substantially. Plaintiffs' arguments are too speculative to support their claim that defendants' acts caused them injury. *See Rubenstein v. IU International Corp.,* 506 F.Supp. 311, 316–18 (E.D.Pa.1980).

In short, notwithstanding plaintiffs' complex arguments concerning the relationship between the tender offer and the merger price, plaintiffs' complaint is essentially no more than a charge that the merger price was unfair. Plaintiffs have a remedy under state law if their allegations are true. They have not stated a claim under federal law.

### B. The Proxy Statement

In Counts I and II, plaintiffs claim that defendants violated §§ 10(b) and 14(a) [11] of the 1934 Act, together with Rules 10b–5 and 14a–9,[12] by issuing a false and mislead-

---

**11.** Section 14(a) provides:

> It shall be unlawful for any person, ... in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 781 of this title.
> 15 U.S.C. § 78n(a).

**12.** Rule 14a–9 provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or

ing proxy statement. In particular, they claim defendants failed to disclose that the proposed payment of $4.00 per share was inadequate and misrepresented the merger as fair to the shareholders of Old Penn. The Third Circuit has squarely rejected such allegations, holding that failure to disclose a breach of fiduciary duty is not a misrepresentation actionable under the federal securities laws. *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir.1978).[13]

The other grounds upon which plaintiffs attack the proxy statement are also insufficient to state a claim. The complaint charges defendants with failure to reveal that minority shareholders would not be entitled to a share of Old Penn's restricted earnings escrow account should the merger be approved. The complaint also alleges that defendants did not disclose the fact that they had selected a merger date which would deprive the minority of Old Penn's substantial Christmas season profits.

■ According to the complaint, the escrow fund consisted entirely of profits earned by Old Penn. Plaintiffs have not alleged that defendants concealed the existence or size of the fund, or that the fund was anything other than an asset of Old Penn which would normally be transferred to New Penn pursuant to the proposed merger. Under Pennsylvania law,[14] shareholders are not entitled to a dividend or distribution merely because the corporation has surplus profits. *Jones v. Costlow*, 349 Pa. 136, 141–42, 36 A.2d 460, 463 (1944). Plaintiffs were informed they would receive $4.00 per share under the merger

agreement, and had no legitimate expectation that they would share directly in either the escrow fund or Old Penn's Christmas season profits.[15] The claim that defendants concealed their intention to deprive plaintiffs of these profits is merely a restatement of plaintiffs' contention that defendants misrepresented the merger as fair when they in fact intended to "freeze out" the minority at an inadequate price. Under *Santa Fe* and *Biesenbach*, plaintiffs have not sufficiently alleged the element of deception required to state a federal cause of action with respect to the proxy statement.

### C. "Controlling Persons" Liability

Count III of the complaint charges that defendants, with the exception of Old Penn, are "controlling persons" liable under § 20 of the 1934 Act, 15 U.S.C. § 78t, for the securities law violations alleged in Counts I and II. Because of my disposition of the underlying counts, Count III must also be dismissed for failure to state a claim. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482, 1496 (D.Del.1984).

### III. RICO

■ Count IV charges defendants with violation of the RICO statute, 18 U.S.C. §§ 1961–1968. Section 1962 of RICO makes it unlawful for any person to acquire or maintain an interest in, or control of, an enterprise through a pattern of racketeering activity, or with income derived

---

subject matter which has become false or misleading.
17 C.F.R. § 240.14a–9(a).

**13.** The principles enunciated in *Santa Fe v. Green* apply to claims brought under § 14(a) as well as those brought under § 10(b). *See, e.g., Gaines v. Haughton*, 645 F.2d 761, 779 (9th Cir. 1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Rubenstein v. IU Int'l Corp.*, 506 F.Supp. 311, 315 (E.D.Pa.1980).

**14.** Old Penn is a Pennsylvania corporation, and the parties apparently assume in their arguments that Pennsylvania law applies to the state law issues in this case. I see no reason to reject their assumption.

**15.** *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107 (S.D.N.Y.1980), which plaintiffs cite in support of their arguments, is inapposite. In *Pellman,* the complaint alleged that defendants had sold certain properties at a loss in order to reduce reported corporate profits before submitting a merger proposal to the shareholders. *Id.* at 109 & n. 1. Plaintiffs in the instant case claim not that defendants reduced corporate profits to facilitate acquisition of control, but that defendants timed the merger so as to prevent plaintiffs from sharing in certain profits. Once again, plaintiffs are simply complaining that the merger was unfair.

from such activity. *Id.* § 1962(a) & (b). Persons employed by an enterprise are prohibited from conducting the affairs of the enterprise through a pattern of racketeering activity. *Id.* § 1962(c). It is also unlawful to conspire to violate the statute. *Id.* § 1962(d). Section 1961(1) sets forth specific "predicate acts" which constitute "racketeering activity," including securities fraud and mail fraud. A "pattern of racketeering activity" requires the commission of two or more predicate racketeering acts within a ten year period. *Id.* § 1961(5).

Section 1964(c) of RICO creates a private right of action, including the right to recover treble damages, for "[a]ny person injured in his business or property by reason of a violation of section 1962." In their motion to dismiss the complaint, defendants have raised complex questions concerning the scope of civil liability under RICO. I need not reach those questions, however, in light of my dismissal of plaintiffs' securities claims.

The RICO count arises from the same set of facts as that upon which plaintiffs' securities law claims are based. The racketeering acts charged against defendants consist of their alleged § 10(b) and § 14(a) violations.[16] Without a valid claim of securities fraud, there are no predicate acts of racketeering to support a RICO cause of action. Plaintiffs' RICO count falls on the same grounds as their securities law claims. *See Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 19–20 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* — U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *In re Catanella,* 583 F.Supp. 1388, 1425 (E.D.Pa.1984);

*Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1498–99 (D.Del. 1984); *Tenaglia v. Cohen,* No. 83–1814, slip op. at 15–16 (E.D.Pa. Mar. 8, 1984); *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 913–14 (S.D.N.Y.1983).

IV. Pendent Jurisdiction

Plaintiffs have failed to state a claim under §§ 10(b) and 14(a) of the 1934 Act. In the words of Judge Giles: "Much like dominoes, the section 20(a) and RICO claims must also fall, leaving the complaint devoid of a federal cause of action." *In re Catanella,* 583 F.Supp. at 1438. Exercise of pendent jurisdiction over the state law claims set forth in Counts V and VI is therefore unjustified. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–1140, 16 L.Ed.2d 218 (1966); *Catanella,* 583 F.Supp. at 1437–38. I will grant defendants' motion to dismiss the entire complaint.[17]

Plaintiffs have requested leave to amend. They have already amended their complaint in response to defendants' motion to dismiss, and have had ample opportunity to set forth any facts which would support a federal securities law claim. Plaintiffs' cryptic presentation at time of oral argument gave me no indication that amendment will cure the defects in the complaint, and I will not authorize an effort to circumvent *Santa Fe Industries v. Green* through still more artful pleading.

---

**16.** Count IV charges that defendants' racketeering activity also consisted of disseminating false tender offer and proxy materials in violation of 18 U.S.C. § 1341, which prohibits use of the United States mail to further a fraudulent scheme. Because plaintiffs have not stated a claim for securities fraud in connection with those materials, their mail fraud claim is also without merit. *See Warner Communications,*

*Inc. v. Murdoch,* 581 F.Supp. 1482, 1499 (D.Del. 1984).

**17.** The parties have also filed certain discovery motions. Because I will grant defendants' motion to dismiss, I will dismiss as moot defendants' motion to stay discovery and plaintiffs' motion to compel production of documents.