John H. BISCHOFF, Jr., Plaintiff,

v.

G.K. SCOTT & CO., INC., George Kevorkian, and Irv J. Fischer, Defendants.

No. CV 85–4677.

United States District Court, E.D. New York.

Aug. 29, 1986.

Hayt, Hayt & Landau, Great Neck, N.Y. (Clifford J. Chu, P.C., of counsel), for plaintiff.

Ormsten & Evangelist, New York City (Franklin D. Ormsten, of counsel), for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiff brings this action seeking damages for securities fraud and civil RICO violations. Defendants move to dismiss the action for failure to state a claim upon which relief can be granted and failure to plead fraud with requisite particularity. For the reasons set forth below the claims are dismissed.

## FACTS

Plaintiff John H. Bischoff, Jr. ("Bischoff") is an unsophisticated investor.[1] At all relevant times, defendant G.K. Scott &

---

1. For purposes of this motion the facts as alleged by the plaintiff are assumed to be true. *Iroquois Industries, Inc. v. Syracuse China Corp.,* 417 F.2d 963, 965 (2nd Cir.1969), *cert. denied,* 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).

Co., Inc. ("Scott") was a registered broker-dealer with the Securities and Exchange Commission ("SEC") and a member of the National Association of Securities Dealers, Inc. Defendant George Kevorkian ("Kevorkian") is president of Scott and a "controlling person" of defendants Scott and Fischer. Defendant Irv J. Fischer ("Fischer") is a registered representative employed by Scott.

In April 1983 plaintiff opened an account with defendants at Fischer's suggestion. The account was originally funded with six securities worth approximately $68,000. Plaintiff told Fischer that because he needed money for his children's college expenses, he wanted to limit speculative transactions to $10,000. Fischer agreed. Based on this representation by Fischer, plaintiff opened the account. At no time did he provide discretionary authority to defendants with respect to the account. As alleged by plaintiff, Fischer never intended to so limit speculative trading but misrepresented his intentions in order to induce plaintiff to open the account.

On the day after plaintiff delivered his six securities, defendants, contrary to plaintiff's instructions and without plaintiff's knowledge, sold five of them and within the next month purchased three speculative over-the-counter securities [2] for which Scott acted as market-maker, a status which was noted on plaintiff's monthly statements dated April 30 and May 31, 1983.

Continuing through April 1985, defendants made further unauthorized purchases of speculative securities without disclosing their risky nature. While plaintiff received monthly statements informing him of these transactions, defendants did not inform plaintiff that they "dominated and controlled the market price for such securities, and that such prices did not bear any relationship to such securities' intrinsic worth."

Noticing the declining value of his account, plaintiff requested, first in December 1983 and again in April 1984, that

defendants liquidate his account. On both occasions Fischer advised plaintiff to retain the securities because they would increase in value. Plaintiff acquiesced, relying on Fischer's expertise. Finally, in the spring of 1985, after the account's value had substantially declined, plaintiff directed defendants to liquidate. At the time this action was filed in December 1985 defendants had not fully complied, and the account contained one security for which no price was available.

Had not defendants made "fraudulent material misrepresentations and omissions," plaintiff claims, he "would not have opened the account with defendants." Complaint at ¶ 18.

## DISCUSSION

Plaintiff's complaint alleges violations of Sections 12 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* and 77*o*; Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; and civil RICO claims pursuant to 18 U.S.C. § 1961 *et seq.* The securities fraud claims rest upon allegations of misrepresentation, non-disclosure, and mismanagement of plaintiff's account through unauthorized trades. The RICO claim is based upon the same events.

### THE SECURITIES FRAUD CLAIMS

To state a Rule 10b–5 claim, plaintiff must allege that defendant:

1. misrepresented or omitted to disclose a material fact;

2. in connection with the purchase or sale of any security;

3. with the requisite scienter—i.e., knowledge or reckless disregard of its falsity, or an intent to deceive;

4. that plaintiff reasonably and detrimentally relied on the defendants' misrepresentations or omissions; and

---

**2.** The three securities were Lasertechnics, Inc.; Reliable Travel International; and Syn Trek, Inc.

5. that defendant used the mails or an instrumentality of interstate commerce or a facility of any national securities exchange. *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314–15 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed. 2d 802 (1978); *Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485, 493 (S.D.N.Y.1984). We discuss in turn each of plaintiff's allegations.

### Fraud in Opening of the Account

■ Plaintiff claims that defendants' misrepresentation of their intention to abide by the $10,000 limitation on speculative trading, made at the inception of the account, satisfies the requisite elements. The defendants contend that such a misdeed amounts to a mere breach of contract or failure to follow a customer's directions. We agree that the alleged fraud at the opening of the account fails to state a claim under Rule 10b–5.

It is well settled that allegations of a mere breach of contract or breach of fiduciary duty, without more, do not state a claim under Section 10(b) or Rule 10b–5. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476–77, 97 S.Ct. 1292, 1302–03, 51 L.Ed.2d 480 (1977); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir.1971). Remedies for such violations are generally sought under state laws or through arbitration proceedings established by the various exchanges. In order to come under the protection of the federal securities laws a plaintiff must allege fraud, and that fraud must be in connection with the purchase or sale of a security. *See Shemtob, supra,* 448 F.2d at 445 (garden variety customers' suits against brokers cannot be bootstrapped into federal securities laws violations "in the absence of allegation of facts amounting to *scienter,* intent to defraud, reckless disregard for

the truth, or knowing use of a device, scheme or artifice to defraud").

■ In general, misrepresentations made by brokers inducing the opening of an account are not actionable under the federal securities laws. Because such broker misrepresentations are connected to the broker's efforts to attract the investor's business, and are not tied to a particular trade, they do not meet the Rule 10b–5 requirement that an actionable misrepresentation be in connection with the purchase or sale of securities. *See, e.g., Darrell v. Goodson,* [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,349 at 97,325 (S.D.N.Y. Apr. 10, 1980) (broker's promise of conservative and prudent management found to be "in connection with defendants' efforts to attract plaintiffs' brokerage business rather than with any subsequent trade in a particular security"); *Troyer v. Karcagi,* 476 F.Supp. 1142, 1149 (S.D.N.Y.1979) (misrepresentation of broker's intent to manage account in plaintiffs' best interests "affected the investors' confidence in a person selected by them to be their fiduciary rather than influencing their decision to purchase or sell particular securities"). Such is the case here. While Fischer's statement that he would limit trades in accordance with plaintiff's instructions may have induced plaintiff to open the account, the statement was not connected to an actual purchase or sale of securities.

■ Fraudulent statements in such circumstances will meet the "in connection with" requirement only in a few, limited situations. Where the underlying account is a discretionary account,[3] for example, the account itself may be an investment contract,[4] or a common enterprise, and may constitute a "security" within the purview of the federal securities laws. *See In re Cantanella and E.F. Hutton & Co. Securities Litigation,* 583 F. Supp. 1388, 1413 (E.D.Pa.1984) (concluding that the choice of

---

3. A "discretionary account" is an account "in which customer gives broker discretion as to purchase and sales of securities or commodities including selection, timing and price to be paid or received." Black's Law Dictionary 419 (5th ed. 1979).

4. An "investment contract" is defined as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946).

a broker for a discretionary account "is tantamount to the choice of securities"); *see also Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1239–40 (S.D.N.Y.1981).

■ A fraudulent promise made to induce the opening of a brokerage account may also satisfy the "in connection with" requirement where the promise itself represents part of the consideration for a securities transaction. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986) ("specific promise to perform a particular act in the future while secretly intending not to perform may violate section 10(b) if the promise is part of the consideration for a sale of securities"). *See Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir.1973) (section 10(b) fraud cognizable where person enters "into a contract of sale with the secret reservation not to fully perform it"); *A.T. Brod & Co. v. Perlow*, 375 F.2d 393, 397 (2d Cir. 1967) (customer's intention to pay for purchased securities only if value rose violated § 10(b)); *Commerce Reporting Co. v. Puretec, Inc.*, 290 F.Supp. 715, 719 (S.D.N.Y. 1968) (fraud stated under § 10(b) where defendants contracted to sell their stock without any intention of doing so if they could find a higher price from another purchaser).

In the case before us, however, neither of these situations is alleged. Plaintiff's brokerage account may not be viewed as a "security" since it was neither discretionary nor an investment contract. In fact, plaintiff states quite emphatically that he "never provided discretionary authority to defendants at any time with respect to the account." Complaint at ¶ 10. Neither may Fischer's promise to limit speculative trading be viewed as consideration for a contract to sell or purchase securities since it influenced, not a securities trade, but merely plaintiff's decision to open his nondiscretionary account. As a result, the allega-

tions regarding defendant Fischer's misrepresentation at the opening of plaintiff's account do not support a 10b–5 violation.

While plaintiff urges an expansive reading of the "in connection with" requirement, to encompass the case at bar, his construction is too broad. Plaintiff relies on *Superintendent of Insurance v. Bankers Life and Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971), where Justice Douglas, in urging that Section 10(b) be read "flexibly, not technically and restrictively," held that 10b–5 liability may be premised upon deceptive practices "touching" a sale of securities. *Id.* at 12–13, 92 S.Ct. at 168–69. However, the Second Circuit, in *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), has ruled that this language does *not* result in expansion of the "in connection with" requirement. As Judge Friendly noted, "there is no reason to believe that the Justice's use of 'touching' was anything more than his variation of 'in connection with' as a matter of literary style." *Id.* at 942 (quoting L. Loss, *Fundamentals of Securities Regulations*, 903–04 (1983).[5] We concur. Because Fischer's misrepresentation at the account opening was not made in connection with the purchase or sale of securities, it cannot serve as the basis for a Rule 10b–5 violation.

*Unauthorized Trades*

■ Plaintiff also points to certain unauthorized trades as supporting his Rule 10b–5 claim. He alleges that defendants purchased "speculative securities" within a month after the account was opened and continued to purchase "additional speculative securities for plaintiff's account, without authorization." Unauthorized trades, however, without more, do not constitute a 10b–5 violation. *Pross v. Baird Patrick &*

5. The earlier decision in *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 710 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), in which the Second Circuit ruled that a defendant's misrepresentation as to his investment expertise was actionable, does not support a different result. The defendant in that case, who held himself out as a "portfolio management specialist" when in fact he was a trainee, rendered investment advice to plaintiffs. The defendant's statements, the court explained, by their very nature induced the purchase of securities. In this case, in contrast, the broker's misrepresentation (of his present intent not to speculate) induced no purchase or sale by the plaintiff.

*Co.*, 585 F.Supp. 1456, 1460 (S.D.N.Y.1984). In order to state a claim, plaintiff must adequately plead that these trades constitute a deceptive practice within the meaning of Section 10(b) and Rule 10b–5.

Plaintiff attempts to meet this requirement with his allegation that defendants failed to disclose certain material facts [6] with regard to the trades. Specifically, plaintiff claims that defendants failed to disclose (1) that there were risks connected with the securities purchases; (2) that defendants "dominated and controlled the market price for such securities, and that such prices did not bear any relationship to such securities' intrinsic worth"; and (3) that the particular securities purchased were "high-risk speculative" securities. For the reasons explained below, each of these claims must fail.

■ Plaintiff's claim that defendant failed to disclose that there were risks associated with securities purchases requires little discussion. As defendants aptly note, the law does not require disclosure of the starkly obvious. *See Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir.1984) (broker's claimed failure to disclose not actionable where allegedly withheld information "was so basic that any investor could be expected to know it"). That there are risks inherent in stock market investment is, in our view, information so basic that it need not be disclosed by the broker.

Plaintiff next alleges that the defendants omitted to disclose a material fact when they acted as a market-maker in the sale to him of various over-the-counter securities.[7] Plaintiff acknowledges that Scott's market-maker status is identified on the monthly statement he received after each sale. He claims, however, that this was not sufficient to apprise him adequately of Scott's actual interests.

■ While acting as a market-maker is not fraudulent, the failure to disclose that fact states a claim under Rule 10b–5. *See Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1170 (2d Cir.1970); *In re Scientific Control Corp. Securities Litigation*, 71 F.R.D. 491, 508 (S.D.N.Y.1976). Since both parties acknowledge that defendant Scott disclosed its status, the issue is whether Scott's disclosure was *adequate*. Plaintiff claims that the defendants failed to disclose that they "dominated and controlled the market price" of the securities purchased for plaintiff's account. Adequacy of disclosure under such circumstances is an extremely fact-sensitive question, dependent upon such factors as plaintiff's status as an unsophisticated investor, and Scott's possible adverse interests to its customer. *See, e.g., In re Scientific, supra,* 71 F.R.D. at 508; *Cant v. A.G. Becker & Co.*, 374 F.Supp. 36, 46 (N.D.Ill.1974) (broker owes higher duty of disclosure to longtime dependent customer than to mere casual purchaser). We need not reach this issue, however, because plaintiff fails to plead the required element of reliance.

In order to state a claim under Rule 10b–5, a plaintiff must allege that the defendant's misrepresentation or omission caused the complained-of injury. *See Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 797 (2d Cir.1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); *List v. Fashion Park, Inc.*, 340 F.2d 457, 462–63 (2d Cir.), *cert. denied*, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). While actual reliance need not be proven,

**6.** The general test for determining the materiality of a non-disclosed fact is found in *T.S.C. Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Materiality is met if there is "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would be viewed by the reasonable investor as having significantly altered the 'total mix' of information available."

**7.** "The term 'market-maker' means any specialist permitted to act as a dealer, any dealer acting in the capacity of block positioner, and any dealer who, with respect to a security, holds himself out (by entering quotations in an interdealer communications system or otherwise) as being willing to buy and sell such security for his own account on a regular or continuous basis." 15 U.S.C. § 78c(a)(38) (1982).

"the facts withheld [must] be material in the sense that a reasonable investor might have considered them important *in the making of this decision." Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (emphasis added). The test, therefore, is one of causation in fact. *Id. See Chasins v. Smith Barney & Co.,* 438 F.2d 1167, 1172 (2d Cir.1970).

There is no such causal link in the present case. Plaintiff alleges that defendant, without consultation or authority, executed certain transactions and notified plaintiff of the trades only after they were consummated. Because plaintiff received statements advising him of the transactions only after they were completed, and defendants never sought nor received plaintiff's approval for the trades, the alleged omissions played no role in the purchases. Indeed, plaintiff does not allege that he relied in any way on defendants' representations as to their market-maker status.[8] The same is true of plaintiff's claim that defendant failed to disclose that the purchased securities were high risk and speculative.[9] Plaintiff did not choose the securities or approve the purchases, and does not claim that he in any way relied on the alleged omissions. This failure is critical. Because the complaint does not allege that defendants' omissions caused plaintiff's injury, it fails to state a claim under Section 10(b) and Rule 10b–5.

*Unsuitability*

It remains only to consider the allegation that defendants chose unsuitable securities for plaintiff's account.

The law in this circuit recognizes a claim under Section 10(b) and Rule 10b–5 "where the plaintiff alleges that a broker knowingly or intentionally chose unsuitable investments for the client." *Leone v. Advest, Inc.,* 624 F.Supp. 297, 304 (S.D.N.Y. 1985); *see Clark v. John Lamula Investors, Inc.,* 583 F.2d 594, 601 (2d Cir.1978). Plaintiff's vaguely worded pleadings imply such a claim. But it is not enough merely to allege or imply that the defendant broker's purchases are inconsistent with a customer's investment objective. A plaintiff

---

**8.** Plaintiff alleges that beginning in December 1983 and specifically in April 1984 and the spring of 1985, he requested the defendants to liquidate his account. Instead of complying, defendants responded by advising plaintiff to retain the securities because they would increase in value. Plaintiff's retention of the stock, "in reliance upon defendant Fischer's professed expertise," Complaint at ¶ 14, does not support a Section 10(b) claim.

Allegations that persons were fraudulently induced *not* to sell their securities do not meet the requirement that the complained of fraud be in connection with the purchase or sale of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 738–39, 95 S.Ct. 1917, 1926–27, 44 L.Ed.2d 539 (1975). In order to be actionable, the alleged fraud must have occurred not subsequent but prior to or contemporaneous with the sale of securities. *See Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1049 (2d Cir.1985), *petition for cert. filed,* 54 U.S.L.W. 3154 (U.S. Sept. 6, 1985) (No. 85–377); *Troyer v. Karcaqi,* 476 F.Supp. 1142, 1148 (S.D.N.Y.1979). Consequently, the mere retention of securities, even where there is a deferred sale, does not support a Section 10(b) claim. *Bolger v. Laventhol, Krekstein, Horwath & Horwath,* 381 F.Supp. 260, 266 (S.D.N.Y.1974); *O'Brien v. Continental Illinois National Bank & Trust Co.,* 593 F.2d 54, 58 (7th Cir.1979).

An exception is made where the inducement to retain the shares is itself fraudulent. *See Rich v. Touche Ross & Co.,* 415 F.Supp. 95, 100 (S.D. N.Y.1976); *Stockwell v. Reynolds,* 252 F.Supp. 215, 219 (S.D.N.Y.1965). But it is obvious that "the mere fact that the defendant's predictions did not materialize [does not] indicate that the statements were untrue at the time of issuance." *See Marbury Management, Inc. v. Kohn,* 470 F.Supp. 509, 512 (S.D.N.Y.1979), *aff'd in part, rev'd in part on other grounds,* 629 F.2d 705 (2nd Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Here, plaintiff does not even allege that defendant's predictions of the stocks' rosy future were fraudulent or untrue.

**9.** We note the oft-repeated rule in this circuit that "[n]ot every 'risky' investment rises to the level of fraud because the risk is insufficiently disclosed." *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978). On the other hand, where a broker deliberately misrepresents or fails to disclose the level of risk involved, knowing that the risk is unacceptable to the plaintiff, the conduct may rise to a 10b–5 violation. *Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1241 (S.D.N.Y. 1981); *see also Alvord v. Shearson Hayden Stone, Inc.,* 485 F.Supp. 848, 854 (D.Conn.1980). We need not rule on this issue, however, in light of our finding that the lack of reliance is dispositive.

must indicate which transactions and securities are involved and the reason why these securities are unsuitable. *See Vetter v. Shearson Hayden Stone, Inc.,* 481 F.Supp. 64, 66 (S.D.N.Y.1979); *Rotstein v. Reynolds & Co.,* 359 F.Supp. 109, 114 (N.D. Ill.1973). This plaintiff fails to do.

Plaintiff does not clearly set forth his investment objectives, stating only that "he needed money for his children's college expenses." The complaint is equally deficient in detailing the complained-of transactions, describing them only as "speculative." More is needed: a naked, conclusory allegation is not sufficient to state a claim for securities fraud. *See, e.g., Felton v. Walston & Co.,* 508 F.2d 577, 581 (2d Cir.1974) ("Simply denominating unspecified statements as 'deceptive' and corporations as 'worthless' is not enough."); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972) (allegations of violations must include "statement of the facts upon which the belief is founded").

It is elementary that fraud must be pled with sufficient particularity. Fed.R.Civ.P. 9(b). *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982). It is not enough to aver the usual "short and plain statement of the claim." *See* Fed.R.Civ.P. 8(a). In order to satisfy Rule 9(b) in a securities fraud case, plaintiff "must allege facts stating the time, place, and nature of the misrepresentations or omissions for which each defendant is to be held responsible." *Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1232 (S.D.N.Y.1981). In all such cases, the "defendant is entitled to a reasonable opportunity to answer the complaint and must be given adequate information to frame a response." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–58 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Because the complaint fails to adequately detail plaintiff's investment objectives and the manner in which the selected securities were inappropriate, the unsuitability claim, too, must fail.

### THE RICO CLAIM

Count III of plaintiff's complaint alleges that "defendants Fischer and Ke-

vorkian were and are associated with defendant Scott & Co. (an enterprise engaged in and whose activities affect interstate commerce), and conducted and participated in the conduct of such defendant's affairs through a 'pattern of racketeering activity' " in violation of 18 U.S.C. § 1962. Complaint at ¶ 24. Pursuant to 18 U.S.C. § 1964, plaintiff seeks treble damages plus costs and reasonable attorney's fees.

In order to state a claim under section 1962, plaintiff must allege

(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Defendants raise a number of deficiencies in plaintiff's pleadings. We need not address all of them, for we find that the RICO claim is deficient in at least one respect.

The predicate acts that constitute "racketeering activity" are set forth in 18 U.S.C. § 1961(1). Plaintiff premises his claim on defendants' commission of securities fraud, discussed earlier in this opinion, as well as acts indictable under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). Properly pled, the mail and wire fraud allegations might support the RICO claim. *See Moss v. Morgan Stanley Inc., supra,* 719 F.2d at 19 n. 15 (RICO claim dismissed where plaintiff failed to plead securities fraud with sufficient particularity and mail fraud not alleged). Based on the complaint before us, however, dismissal of the securities fraud claims requires dismissal of the RICO claim as well. *See Nutis v. Penn Merchandising Corp.,* 610 F.Supp. 1573, 1583 (E.D.Pa.1985), *aff'd,* 791 F.2d 919 (3d Cir.1986); *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1498–99 (D.Del.1984).

Plaintiff's RICO claim is based upon the same facts he draws upon to support the securities claims, facts we have already

found to be inadequately detailed under Rule 9(b). And Rule 9(b), of course, applies equally to allegations under RICO. *Moss v. Morgan Stanley Inc.*, 719 F.2d at 19; *Equitable Life Assurance Society v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1028 (S.D.N.Y.1985); *see Mauriber v. Shearson/American Express, Inc.*, 546 F.Supp. 391, 396 (S.D.N.Y.1982). For this reason the complaint must fail.

Like the complaint in *Mauriber*, the complaint in this action "alleges a violation of RICO by vaguely referring back to all of the preceding paragraphs that constitute the Section 10(b) violation." 546 F.Supp. at 397. The RICO count adds only a single, rambling paragraph [10] which adds little to the factual allegations that purport to support the mail and wire fraud predicate acts. We thus do not reach the questions of whether the complaint properly alleges the existence of an enterprise and a pattern of racketeering activities. Like plaintiff's securities fraud claim, the RICO claim is dismissed for failure to plead fraud with particularity.

### CONCLUSION

Plaintiff's claims are dismissed. Because we believe that defects in the pleadings should not foreclose possibly meritorious claims, however, we grant leave to file an amended complaint within 30 days. *See Ross v. A.H. Robins Co., supra,* 607 F.2d at 547.

SO ORDERED.

---

[10]. The acts constituting such "racketeering activity" include offenses involving fraud in the sale of securities (as set forth above), as well as acts indictable as mail fraud under 18 U.S.C. § 1341 and as wire fraud under 18 U.S.C. § 1343, in that defendants Fischer and Kevorkian conducted or participated, directly or indirectly, in the affairs of defendant Scott & Co., which affairs involved the devising of, or intending to devise, schemes or artifices to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises. Such affairs involved (a)(i) placing in any post office or authorized depository for mail matter, matters and things to be sent or delivered by the Postal Service, (ii) taking or receiving therefrom, matters and things, and (iii) knowingly causing matters and things to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed; and (b) transmitting or causing to be transmitted by means of wire communication in interstate commerce, signals and sounds; such affairs were done for the purpose of executing such schemes or artifices to defraud.

Complaint at ¶ 27.